GAETANO MASSIE *et al., Respondents,* v. MERLIN C. BROWN *et al., Petitioners.*

491

*A. L. Newbould, Corporation Counsel,* and *E. Neal King, Assistant,* for petitioners.

*Wettrick, Toulouse, Lirhus & Hove* and *John Spiller, Ralph C. Hove,* and *Arnold J. Barer,* for respondents.

FINLEY, J.—This case is here on a petition to review a decision of the Court of Appeals. That decision affirmed as modified a judgment of the Superior Court for King County which permanently enjoined the City of Seattle and its Civil Service Commission from extending civil service status to warrant servers in the Seattle Traffic Bureau.

The pertinent facts are as follows: Between January 16, 1967, and September 2, 1969, respondents Gaetano Massie, Dave Grimsrud, Emil Deskins and James Paul McKay were employed as warrant servers for the Traffic Violations Bureau of the Municipal Court of the City of Seattle. In November 1970, the Civil Service Commission of the City gave notice of a competitive examination for the position of warrant server. All four respondents took the examination. Two failed completely and the other two failed to place high enough to be eligible for appointment to existing vacancies. Respondents then instituted this action for injunctive relief.

Opinions rendered by the trial court and the Court of Appeals raise three distinct issues: (1) Has the legislature granted the City of Seattle authority to apply its civil service provisions, as contained in the Seattle City Charter, to the position of warrant server? (2) Does the Seattle City Charter by its own terms manifest an intent to include warrant servers in its civil service system?[1] (3) Does the inclusion of warrant servers within the city civil service system violate the doctrine of separation of powers?

■ · Article 11, section 10, amendment 40 of the Washington Constitution authorizes cities containing a population of 20,000 or more inhabitants to adopt home rule charters. The City of Seattle did so on March 12, 1946. However, under this constitutional provision municipal corporations which have adopted charters are not entirely exempt from legislative control, for this court rejected the doctrine of an inherent right to self-government in *State ex rel. Clausen v. Burr*, 65 Wash. 524, 118 P. 639 (1911). Therefore, at least when the interest of the State is paramount to or joint with that of the municipal corporation, the municipal corporation has no power to act absent a delegation from the legislature. *Tacoma v. State*, 4 Wash. 64, 29 Pac. 847 (1892); *Neils v. Seattle*, 185 Wash. 269, 53 P.2d 848 (1936); *State ex rel. Bowen v. Kruegel*, 67 Wn.2d 673, 409 P.2d 458 (1965). *See also* Trautman, *Legislative Control of Municipal Corporations in Washington*, 38 Wash. L. Rev. 743, 765-72 (1963).

---

[1]Article 3

"Section 2. The said departments, with the exception of the Judicial, Library and Transportation departments, so long as they are constituted in accordance with the provisions of state law, shall be constituted as hereinafter provided, subject only to such changes as are expressly authorized by this charter."

Article 16

"Section 3. EMPLOYEES, CLASSIFICATION, GRADES, COMPENSATION: The commission shall classify, with reference to the examination hereafter provided for, all the offices and places of employment in the public service of the city, except the offices and places mentioned in Section 11 of this article."

The case at bar falls within this category. *In re Cloherty,* 2 Wash. 137, 27 P. 1064 (1891), held that a grant of a charter of incorporation pursuant to article 11, section 10 of the Washington Constitution did not ipso facto grant a concomitant right to create police courts. Similarly, a grant of a charter does not grant the power to create traffic courts. Rather, such courts can be created only by the legislature and they can be regulated by municipal corporations only to the extent that the legislature has delegated that power.[2] Appellant therefore urges that such a recognition of power can be found in RCW 35.20 (hereinafter rereferred to as the Municipal Court Act). Hence, we turn to that statute to ascertain whether such a power has been granted either expressly or impliedly.

█ It is clear that nowhere in the Municipal Court Act is the power *expressly* granted to the City of Seattle to apply its civil service provisions to warrant servers. However, because the position of warrant server is within the Traffic Violations Bureau, the director of which is expressly made subject to civil service provisions, and because of certain language in the 1969 amendments to the Municipal Court Act providing for continued civil service status for employees theretofore included in any applicable civil service system,[3] appellant urges that the legislature has im-

[2]The legislature has continuously exercised this power of delegation. *See, e.g.,* Laws of 1899, ch. 85; Laws of 1941, ch. 85; Laws of 1943, ch. 105. *See also* RCW 35.20.100, .160, and .200 granting the city certain limited regulatory powers over salaries of judges and the power to create additional departments of the municipal court.

[3]RCW 35.20.131.
"There shall be a director of the traffic violations bureau or such similar agency of the city as may be created by ordinance of said city. Said director shall be appointed by the judges of the municipal court subject to such civil service laws and rules as may be provided in such city. Said director shall act under the supervision of the court administrator of the municipal court and shall be responsible for the supervision of the traffic violations bureau or similar agency of the city. Upon this 1969 amendatory act becoming effective those employees connected with the traffic violations bureau under civil service status shall be continued in such employment and such classification."

pliedly recognized and authorized the practice of the only city in the state operating under the Municipal Court Act of including warrant servers in its civil service system. An assessment of this contention necessitates a brief survey of the history of the Municipal Court Act.

Initially enacted in 1955,[4] the entire structure of the act distinguishes between judicial personnel and personnel performing clerical functions. Thus, section 21 of the act placed clerical employees and the chief clerk under the authority of the city comptroller in the financial department and specifically provided that such positions would be subject to applicable civil service provisions. In contrast, by virtue of section 23, other court personnel such as bailiffs and probation officers were placed under the authority of the judiciary and no provision was made authorizing application of civil service provisions to these positions. As such, *Cloherty* precludes subjecting these positions to the civil service provisions of the Seattle City Charter.

The pivotal question thus becomes whether the functions of a warrant server most closely resemble those of a court attache, such as bailiffs and probation officers, or those of clerical personnel.

The term bailiff is nowhere defined in RCW 35.20 nor in its precursor, Laws of 1955, ch. 290. Moreover, while the duties of the chief clerk are expressly delineated, those of a bailiff are not. However, the term bailiff is generally defined to include a sheriff's deputy or officer. J. Ballentine, *Law Dictionary With Pronunciations* 119 (3d ed. 1969); W. Shumaker and G. Longsdorf, *Cyclopedic Law Dictionary* 97 (3d ed. 1940); Black's Law Dictionary 178-79 (4th ed. 1951). Historically, the functions performed by a sheriff have included those now performed by a warrant server. *See* 62 Am. Jur. 2d *Process* §§ 31, 32 (1972); 47 Am. Jur. *Sheriffs, Police, and Constables* § 26 (1942). It follows that warrant servers can be roughly analogized to and therefore should be treated as bailiffs within the contemplation of the

---

[4]Laws of 1955, ch. 290.

Municipal Court Act of 1955 rather than as clerical employees. As such, the 1955 act did not subject the position of warrant server to any applicable civil service provisions.

The 1969 amendments altered part of the structure of the 1955 act, but they did not effect any change in the civil service status of bailiffs or warrant servers. All clerks and assistant clerks were placed under the supervision and authority of the judiciary, thereby removing them from the supervision of the city comptroller.[5] However, the legislature manifested an intent to continue their civil service status by providing "those employees connected with the court under civil service status shall be continued in such employment and such classification." RCW 35.20.210. Similarly, RCW 35.20.131 in creating the position of director of the Traffic Violations Bureau and making him subject to any applicable civil service provisions contains an identical provision.[6] However, since civil service status could not be extended to warrant servers under the 1955 act, it is dubious that this cryptic provision was intended to be a delegation of power to the city, particularly since reference could have easily been made to warrant servers the same as it was made to the director of the Traffic Violations Bureau. On the contrary, this provision simply contemplated that those clerical employees previously connected with the Traffic Violations Bureau and who previously had been under the supervision of the city comptroller would not have their civil service status altered by the fact of their transfer to the Judiciary Department.

In short, then, although we have indicated in prior cases that statutes relating to first-class cities should be liberally construed,[7] we can find no statutory authority either express or reasonably implied for the City of Seattle to ex-

---

[5]*See* RCW 35.20.210, .220.

[6]*See* note 3, *supra.*

[7]*See State ex rel. Ennis v. Superior Court,* 153 Wash. 139, 279 Pac. 601 (1929); *Winkenwerder v. Yakima,* 52 Wn.2d 617, 328 P.2d 873 (1958). *See also* Trautman, *Legislative Control of Municipal Corporations in Washington,* 38 Wash. L. Rev. 743, 774 (1963).

tend its civil service provisions to warrant servers. Because this conclusion disposes of the case, we need not decide (1) whether the Seattle City Charter, by its own terms, includes warrant servers within its provisions for civil service, and (2) whether so including warrant servers within the civil service would violate the doctrine of separation of powers.

It is true that a certain anomaly is apparent, *viz,* the director of the Traffic Violations Bureau is subject to civil service provisions pursuant to RCW 35.20.131 while subordinate warrant servers are not. Generally, the structure of civil service is the reverse: policy-making officials are often exempted while subordinates within the department are included within its coverage. However, if an anomaly has been created, it has been created by the legislature in structuring the Municipal Court Act. It is therefore within the discretion of the legislature and beyond the province of this court to alter the situation.

For the reasons stated herein, the judgment of the Court of Appeals is affirmed.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

[No. 43175.    En Banc.    October 24, 1974.]