[No. 46145.   En Banc.   May 22, 1980.]

THE CITY OF ISSAQUAH, *Respondent,* v. TELEPROMPTER
CORPORATION, ET AL, *Appellants.*

*Davis, Wright, Todd, Riese & Jones,* by *Marshall J. Nelson* and *Robert A. Blackstone,* for appellants.

*Hackett, Beecher, Hart, Branom & Vavrichek,* by *John A. Hackett* and *K. C. Webster,* for respondent.

*Jerome L. Buzzard* on behalf of Washington State Cable Communications Association, amicus curiae.

WILLIAMS, J.—This case, which comes to us on certification from Division One of the Court of Appeals, poses the following question: Is a city authorized to acquire, own and operate a cable television system within its municipal borders? The trial court held that it is, and we affirm.

Respondent City of Issaquah (city) is a noncharter code city of the State of Washington. Teleprompter Corporation, a New York corporation authorized to do business in Washington, and its wholly owned subsidiaries Northwest Cablevision, Inc., and Color Cablevision, Inc., carry on a cable television business as Teleprompter of Seattle (Teleprompter), appellant herein.

Cable television systems were originally developed as auxiliaries to broadcasting through the retransmission by wire of intercepted television signals to viewers unable to receive them because of distance or local terrain. *United States v. Midwest Video Corp.,* 406 U.S. 649, 650, 32 L. Ed. 2d 390, 92 S. Ct. 1860 (1972). Subsequent technology has made possible not only the function of enhanced reception, but also the transmission of the signals of distant stations entirely beyond the range of local antennae. *Midwest Video Corp.,* at 650 n.1; *United States v. Southwestern Cable Co.,* 392 U.S. 157, 163, 20 L. Ed. 2d 1001, 88 S. Ct. 1994 (1968). At the present time, the standard 12–channel systems are capable of conversion to many more channels, dramatically increasing the range of programming available to cable subscribers. *Midwest Video Corp.,* at 651.

Cable systems should not be confused with television translator stations (translators), which are receiving and transmitting devices which receive off–the–air television signals and rebroadcast them for reception by the general public. Unlike cable systems, there are no subscribers to a translator, as its signals are received through the air in the same manner as original radio and television signals. Enhancement of reception is apparently the major function of a translator, whose frequencies and channels are fixed by the Federal Communications Commission. 47 C.F.R. §§ 74.701(a) and 74.702 (1979).

The parties in the present case stipulated that the city is not presently served by either a privately or publicly owned television translator station. Moreover, natural terrain barriers between the city and area television transmitters make television reception of poor quality in most parts of the city. It thus appears that Teleprompter's cable system has been the sole scheme for enhancing television reception in the city, where the enterprise is part of a "consolidated" system of 952 miles of cable serving 32,400 subscribers in Seattle and King County. The Issaquah portion consists of approximately 28 miles of cable serving approximately

1,200 subscribers within the city and 150 subscribers just outside the city limits.

In the city, Teleprompter operates under two franchises which were granted by ordinances Nos. 931 and 932 in 1967 and 1968 respectively to Teleprompter's two predecessors in interest for 20–year terms. In 1970, both companies were acquired by Teleprompter as wholly owned subsidiaries. Section 10 of both ordinances is identical and provides in part as follows:

> Section 10. That the rights and privileges herein granted shall not be deemed exclusive, and the right is hereby reserved to the City . . . at any time during the life of such grant to acquire, by purchase or condemnation, for the use of the City itself, all the property of the Grantee within the limits of the public streets, at a fair and just value, which shall not include any valuation for the franchise itself, or of any of the rights and privileges hereby granted, and the grant shall thereupon terminate.

Ordinances Nos. 931 and 932. Both ordinances, including section 10, were drafted by Teleprompter's predecessors in interest and enacted verbatim in form and style by the city council.

On February 22, 1977, the Issaquah City Council enacted ordinance No. 1265, the effect of which is summarized in its title:

> AN ORDINANCE authorizing the City of Issaquah to own and operate a cable television system for television signal distribution throughout the City of Issaquah in promotion of the public health, safety, morals and welfare; authorizing city acquisition, by purchase or condemnation, of property owned by the franchise grantees [appellant herein] under Ordinances 931 and 932, as exists within the limits of the public streets of the City of Issaquah; providing for termination of the franchise grants issued under Ordinances 931 and 932 upon such acquisition, and authorizing judicial proceedings to determine rights, status or legal relationships arising out of this Ordinance together with Ordinances 931 and 932.

Pursuant to the authorization contained in this ordinance, the city filed the present declaratory judgment

action requesting the court to enter judgment (1) declaring ordinance No. 1265 to be a valid exercise of the city's powers, and (2) clarifying the rights and duties of the parties under ordinances Nos. 931 and 932. Teleprompter answered, asking the court to declare that ordinance No. 1265 was an unlawful exercise of the city's authority.

The case was tried on stipulated facts. At the conclusion of trial, the court filed findings and conclusions and entered judgment on behalf of the city, declaring ordinance No. 1265 to be a valid exercise of the city's powers and ruling that the city could lawfully (1) own and operate a cable television system within its corporate limits and (2) terminate the franchise grants held by Teleprompter upon purchase of Teleprompter's property within the city limits.

The Court of Appeals certified Teleprompter's appeal to this court pursuant to RCW 2.06.030(d) and (e).

I

Teleprompter first argues that the acquisition, ownership, and operation of a cable television system exceeds the powers of any city, which, like Issaquah, is governed by the optional municipal code, RCW Title 35A. It is urged that municipal ownership of a cable system conflicts with RCW 36.95, which is characterized as a "general law".[1] Since Const. art. 11, § 10 requires that cities and towns be "subject to and controlled by general laws", the city's powers under the optional municipal code are limited, Teleprompter contends, by RCW 36.95.

---

[1] RCW 36.95, which is entitled "Television Reception Improvement Districts", reads in pertinent part:

"The purposes of a television reception improvement district, hereinafter referred to in this chapter as 'district', shall be to serve the public interest, convenience, and necessity in the construction, maintenance, and operation of *television translator stations,* including appropriate electric or electronic devices for increasing television program distribution, but said purposes are not meant to include the construction or operation of television cable systems, commonly known and referred to as cable TV systems or CATV." (Italics ours.) RCW 36.95-.010.

■ We need *not* decide whether RCW 36.95 is a general law as contemplated by Const. art. 11, § 10, since its provisions, read as a whole, do not conflict with municipal ownership of cable television systems. RCW 36.95 merely authorizes any person or entity to petition the county commissioners to form a special service district, in accordance with the statutory provisions. A code city like Issaquah is not prevented from petitioning to form a television reception improvement district.

For purposes of this case, the relevant limitation on such districts is that they may not construct or operate cable television systems (RCW 36.95.010) or include within district boundaries after August 9, 1971, any area already being served by a cable television system. RCW 36.95.020. This limitation is quite different from Teleprompter's assertion that code cities have no authority to operate cable television systems. The section by its terms relates to the powers of television reception districts, not the powers of cities and towns. We see no conflict between the statute and municipal ownership of a cable television system. A city could enter the cable television arena and local enabling legislation would not be inconsistent with the express provisions of RCW 36.95. Nor are we aware of any other general laws which either prohibit a code city from operating a cable television system or conflict with any powers relating to cable television which may be implied from the optional municipal code.

Teleprompter next contends that RCW 36.95 indicates a legislative concern over television reception which requires regional or statewide solutions. Since television reception is not merely a matter of local concern, it is argued, the city may not legislate in the area without express legislative delegation, which is concededly absent. RCW 35A.01.010.

■ We agree that RCW 35A.01.010 confers broad powers as to local government issues only. When a subject of paramount state concern or joint state/city concern is involved, express delegation of authority is required before

a municipal legislative body may act on the subject. *Massie v. Brown*, 84 Wn.2d 490, 492–93, 527 P.2d 476 (1974).

It seems clear to us that the subject addressed by RCW 36.95 deals with television translator stations, the restrictions on their construction and operation, and the establishment of special districts to finance them. It is true that a television reception district may reach across municipal boundaries and may ultimately encompass an entire county. RCW 36.95.020. But that is not to say that television reception is a matter of statewide significance of such a magnitude that the legislature has determined not to permit local action on the matter. Indeed, the statute appears to provide *to localities* a mechanism for solving a problem which varies from community to community: inadequate television reception. Moreover, the terms of the statute are permissive, with nothing to prevent an alternate solution to the problem.

The only case cited to us for an interpretation of the term "paramount state concern" is *Massie,* which does not aid Teleprompter's argument. In that case, we concluded that the City of Seattle could not apply the civil service provisions of the city charter to warrant servers in the Seattle Traffic Bureau. This was so because warrant servers are court personnel under the municipal court act, RCW 35.20, and municipal corporations may regulate the court system only to the extent the legislature has delegated power to regulate. *Massie,* at 493. By contrast, we find no intent by the legislature in RCW 36.95 to prevent autonomous municipal activity in the area of cable television systems.

Teleprompter further asserts that municipal ownership of a cable television system conflicts with RCW 35A.80 and RCW 35.92 and therefore exceeds the delegated authority of the city.[2] This is so, it is argued, because a cable television system is a utility, and under RCW 35A.80.010, a city may operate a utility system only as authorized under

---

[2]RCW 35A.80.010 provides in full:

RCW 35.92. The parties agree that RCW 35.92 does not authorize the municipal ownership and operation of cable television systems.

■ We are not provided with a definition of "utility", nor do the parties advance any helpful discussion on the distinguishing characteristics of utilities. The trial court made no findings or conclusions on this point, nor do the statutes provide a clear definition, although some specific types of utilities, not including cable television systems, are described in RCW 35.92. *See* RCW 35.92.010, .050, .060, .280. In a statute dealing with the conversion of electric and communication facilities to underground facilities in cities and towns, cable television is included in the definition of "'[c]ommunication utility'". RCW 35.96.020. But we see no relationship between the inclusion of cable television as a "'[c]ommunication utility'" for the narrow purposes of RCW 35.96 and the conclusion that cable television is a utility service subject to RCW 35A.80 and 35.92.

This determination is supported by Teleprompter's own frequent assertions at trial that cable television is not a utility. Counsel stated, for example,

> cable is definitely not a utility, even in Issaquah. It's basically a luxury service. It's television improvement. It's something you can do with a rooftop antenna. In that sense, it's not a utility.

Since we find that cable television is not a public utility as contemplated by RCW 35A.80 and 35.92, it follows that those provisions do not address municipal ownership and

---

"A code city may provide utility service within and without its limits and exercise all powers to the extent authorized by general law for any class of city or town. The cost of such improvements may be financed by procedures provided for financing local improvement districts in chapters 35.43 through 35.54 RCW and by revenue and refunding bonds as authorized by chapters 35.41, 35.67 and 35.89 RCW and Title 85 RCW. A code city may protect and operate utility services as authorized by chapters 35.88, 35.91, 35.92, and 35.94 RCW and may acquire and *damage property in connection therewith as provided by chapter 8.12 RCW and* shall be governed by the regulations of the pollution control commission as provided in RCW 90.48.110."

operation of cable television systems. Moreover, we apprehend no general law which conflicts with the city's authority under the optional municipal code to operate such a system. Nor do we discern a legislative intent in the television reception improvement act (RCW 36.95) to prevent local bodies from engaging in cable television activity. Accordingly, we conclude that cable television activity by a municipality does not exceed the broad powers granted by the optional municipal code, RCW Title 35A.

## II

Even if a municipality is empowered by statute and constitution to own and operate a cable television system, Teleprompter nonetheless contends that the city had no power to reserve the right in the original franchise ordinances to acquire Teleprompter's property under the conditions specified.

In 1967 and early 1968, when the franchises in question were granted, the city was a third–class city possessing the powers expressly delegated in RCW 35.24 and those powers reasonably implied therefrom. *Othello v. Harder,* 46 Wn.2d 747, 752, 284 P.2d 1099 (1955). Among other powers the city was authorized

> (10) To permit, under such restrictions as it may deem proper, and to grant franchises for, the laying of railroad tracks, and the running of cars propelled by electric, steam or other power thereon, and the laying of gas and water pipes and steam mains and conduits for underground wires, and to permit the construction of tunnels or subways in the public streets, and to construct and maintain and to permit the construction and maintenance of telegraph, telephone and electric lines therein[.]

RCW 35.24.290(10). Moreover, the statute vested control of the city streets in the city:

> (3) To establish, build and repair bridges, to establish, lay out, alter, keep open, open, widen, vacate, improve and repair streets, sidewalks, alleys, squares and other public highways and places within the city, and to drain, sprinkle and light the same; to remove all obstructions therefrom; to establish and reestablish the grades

thereof; to grade, plank, pave, macadamize, gravel and curb the same, in whole or in part; to construct gutters, culverts, sidewalks and crosswalks therein or upon any part thereof; to cultivate and maintain parking strips therein, and generally to manage and control all such highways and places; . . .

RCW 35.24.290(3). In addition, the city was specifically empowered in 1967 to "purchase, lease, receive, hold, and enjoy real and personal property and . . . control and dispose of it for the common benefit . . ." RCW 35.24.010.

The parties agree that the city had the power to require a company to obtain a franchise to operate a cable television system as a condition precedent to use of the city streets for underground wiring. *See* Attorney General Opinion, July 11, 1966. They also agree that the city possessed no express or implied power in 1967 to operate a cable television system.

Teleprompter takes the position that the city attempted through section 10 of ordinances Nos. 931 and 932 to reserve the right to acquire and operate a cable television system, an activity admittedly ultra vires in 1967. This argument, however, ignores the express language of section 10:

[T]he right is hereby reserved to the City . . . at any time during the life of such grant to acquire, by purchase or condemnation, *for the use of the City itself, all the property of the Grantee within the limits of the public streets,* at a fair and just value, . . .

(Italics ours.) This language did not by its terms indicate that the city envisioned that it would acquire a cable television system. Indeed, the reservation of the right to acquire the property could have been for a number of purposes, not all of them necessarily contemplated in 1967. As the city points out,

[t]he City may well have contemplated acquiring the in-street facilities by purchase to facilitate relocation and/or accommodation of new, additional or modified street

uses. The City might well elect to utilize the cable facilities to initiate some service to its residents not now provided by cable television. Whether the city would mechanically transmit a television broadcast . . . was not known in 1967. . . . Nor could one in 1967 foresee all the potential uses for the equipment the cable companies placed in the public streets. The franchise contract reservation was one in which the city expressly reserved the power to purchase or condemn the grantee's equipment. No more, no less.

It bears repeating that the language of section 10 was tendered by Teleprompter's predecessors, and the city made no modifications in the terms of the franchise. Finding of fact No. 8.

█ Municipal franchise ordinances are contracts and are binding upon the municipality and the franchisee according to the terms therein. *Tukwila v. Seattle*, 68 Wn.2d 611, 615, 414 P.2d 597 (1966). A municipality is unquestionably empowered to impose lawful restrictions on the franchises it agrees to grant. RCW 35.24.290(10); 12 E. McQuillin, *The Law of Municipal Corporations* § 34.36 (3d rev. ed. 1970). If the restrictions so imposed do not conflict with constitutional or statutory provisions, we do not presume to review the appropriateness of the conditions in a franchise granting a privilege to use the city streets. *Baxter–Wyckoff Co. v. Seattle*, 67 Wn.2d 555, 562, 408 P.2d 1012 (1965). Teleprompter has not persuaded us that the relevant restrictions in franchise ordinances Nos. 931 and 932 are in conflict with the constitution or statutes, and we hold accordingly that the conditions are an enforceable part of the franchise agreements.

## III

Section 10 of ordinances Nos. 931 and 932 included, in part, the language, "at any time during the life of such grant to acquire, by purchase or condemnation, for the use of the City itself, all the property of the Grantee within the limits of the public streets, . . ." The lower court interpreted this language to permit the city to proceed by either

method, purchase or condemnation, regardless of whether the grantee was willing to sell or not.

Assuming the validity of the reservation of power, Teleprompter next argues that where the grantee is unwilling to sell its property, the city must proceed under the condemnation provisions of RCW 8.12. Since Teleprompter is unquestionably unwilling to sell in the present case, it contends that the city cannot purchase but must take by eminent domain which requires among other things a showing of public use. RCW 8.12.030.

■ Teleprompter reasons the above result is required because of the rule of statutory construction that requires *all* words in legislation be given effect. Thus, it is argued, the term "condemnation" in ordinances Nos. 931 and 932 must be given effect whenever the grantee is unwilling to convey by sale, since otherwise no city would ever elect to proceed by the more onerous condemnation proceeding, rendering meaningless the word "condemnation". This argument is without merit. While the franchise is municipal legislation, it is also a contract (*Tukwila v. Seattle, supra*) freely entered into by Teleprompter's predecessors. A fair reading of the plain terms of section 10 indicates the city reserved the right to choose between purchase and condemnation.

## IV

Finally, Teleprompter argues that public ownership and operation of a cable television system violates the first amendment to the United States Constitution. We cannot agree.

■■ No authority is advanced for the proposition that ownership of cable television systems must, as a matter of constitutional law, be in private hands. Indeed, Teleprompter does not dispute that the city had the authority to deny a franchise at the outset and that such a denial would have raised no constitutional claim on Teleprompter's part. *Cf. Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 389, 23 L. Ed. 2d 371, 89 S. Ct. 1794 (1969). If

there could be no abridgment of free speech in an initial denial of a permit, we have difficulty with the assertion that the city's reservation of the right to acquire the property at a later date somehow violates Teleprompter's rights. The argument in effect is that there is no right of free speech before awarding of a franchise but that, once granted, the franchisee acquires not only a franchise but a right protected by the First Amendment. This claim is likewise without merit.

Fundamentally, Teleprompter's First Amendment argument appears to be grounded in a fear that city ownership of a cable system will result in government censorship. At most, this raises a *potential* infringement of the First Amendment rights not of Teleprompter but of the viewing public. Assuming without deciding that Teleprompter has standing to assert the public's rights in this matter, no violation has been shown. We do not decide constitutional questions in hypothetical situations. *See O'Shea v. Littleton,* 414 U.S. 488, 493–94, 38 L. Ed. 2d 674, 94 S. Ct. 669 (1974).[3]

The judgment of the trial court is affirmed in all respects.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied September 4, 1980.

---

[3]The First Amendment argument is weakened as well by the fact that municipally owned cable television systems exist in many parts of the country, including Sumas, Washington. Synchef, *Municipal Ownership of Cable Television Systems,* 12 U.S.F. L. Rev. 205, 235 n. 158 (1978).