[No. 70895-9.   En Banc.]
Argued May 31, 2001.     Decided August 23, 2001.

RONI HEINSMA, *Appellant*, v. THE CITY OF VANCOUVER, *Respondent*.

*Darren C. Walker* (*Jordan W. Lorence* of *Northstar Legal Center* and *Jonathan P. Gundlach*, of counsel), for appellant.

*Ted H. Gathe*, *City Attorney*, and *Debra Quinn*, *Assistant*, for respondent.

*Jerry F. King* and *William L. Cameron* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

*Karolyn A. Hicks*, *Jennifer C. Pizer*, and *Aaron H. Caplan* on behalf of American Civil Liberties Union, amicus curiae.

OWENS, J. — In this appeal, we must determine whether the City of Vancouver exceeded authority under article XI, section 11 of the state constitution by extending insurance benefits to the domestic partners of city employees. The appellant, Roni Heinsma, argues that the city abused its discretion under RCW 41.04.180 by expanding the definition of "dependents" to include domestic partners. However, the trial court concluded that the benefits program was constitutional and that the regulation of employee benefits was a matter of local concern. We agree and affirm the decision of the trial court.

## FACTS

In May 1998, the City of Vancouver began offering

benefits to its city employees' domestic partners and the domestic partners' children. Under this program, domestic partners of city employees may qualify to receive health insurance benefits, and city employees may use their sick leave to care for their domestic partners or for their domestic partners' children.

To qualify as a domestic partner for purposes of Vancouver's benefits program, the employees and their partners must file an affidavit proclaiming that their relationship exists.[1] Since the program was implemented, at least 29 partnerships have been registered, and all of the domestic partners have been approved to receive benefits. In addition, 13 children have also been approved to receive benefits. During 1998, the city spent at least $20,000 of its tax funds to cover the costs of extending benefits to domestic partners and their children.

Heinsma is a taxpayer and resident of the City of Vancouver. Heinsma filed an action requesting that the trial court grant declaratory judgment against the city based on the alleged unconstitutionality of the benefits program. At trial, both parties moved for summary judgment, and the trial court awarded summary judgment to the City of Vancouver, concluding that the extension of benefits to domestic partners was a matter of local rather than statewide concern. Heinsma sought review in the Court of Appeals; however, this court accepted review of this case by way of certification from the Court of Appeals.

## ISSUE

Whether the City of Vancouver's Domestic Partner Benefits Program violates article XI, section 11 of the state constitution by impermissibly expanding the definition of

---

[1] In the affidavit, the parties verify that they (1) are at least 18 years old, (2) have an intimate and caring relationship, (3) have no other domestic partners, (4) are not legally married, (5) share a residence, (6) are jointly responsible for basic living costs such as food and shelter, (7) are not so closely related by blood as would prevent their marriage under Washington law, and (8) are mentally competent.

"dependents" as contained in RCW 41.04.180 to include domestic partners.

## ANALYSIS

■ Under article XI, section 10 of the state constitution, first class cities, like Vancouver, may adopt city charters, which allow cities to exercise broad legislative powers. In addition, the legislature has delegated police powers to charter cities so that the cities "may make and enforce within [their] limits all such local police, sanitary and other regulations as are not in conflict with general laws."[2] CONST. art. XI, § 11. Thus, a first class city may, without sanction from the legislature, legislate regarding any local subject matter. *City of Spokane v. Portch*, 92 Wn.2d 342, 345-46, 596 P.2d 1044 (1979). However, this power ends when the legislature adopts a law concerning a particular interest, unless the legislature has left room for concurrent jurisdiction. *Lenci v. City of Seattle*, 63 Wn.2d 664, 669, 388 P.2d 926 (1964). When the state's interest is paramount or joint with the city's interest, the city may not enact ordinances affecting the interest unless it has delegated authority. *Massie v. Brown*, 84 Wn.2d 490, 492, 527 P.2d 476 (1974).

Heinsma asserts that the city exceeded its authority under RCW 41.04.180 by extending insurance benefits to the domestic partners of its employees. Under RCW 41-.04.180, the legislature authorized cities to provide medical insurance benefits to their employees and the employees' dependents. Heinsma asserts that domestic partners are not dependents within the meaning of the statute and that the city's recognition of domestic partnership is ultra vires because the legislature has a paramount interest in defining and regulating familial relationships.

On the other hand, the City of Vancouver asserts that it

---

[2] Vancouver is a "home rule" city; it "may exercise powers that do not violate a constitutional provision, legislative enactment, or the city's own charter." *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 99 Wn.2d 772, 792, 666 P.2d 329 (1983) (citing *Winkenwerder v. City of Yakima*, 52 Wn.2d 617, 622-23, 328 P.2d 873 (1958)).

had discretion to define the term "dependents" because the legislature did not define the term in the statute. In addition, the city argues that the distribution of employee benefits is a local interest and that it has broad power to regulate those benefits so long as the regulations do not conflict with RCW 41.04.180. Finally, the city asserts that it has not created a new marital status because its recognition of domestic partnership is limited to its employee benefits program and because its recognition did not affect the legislature's ability to regulate familial relationships on a statewide basis.

Municipal ordinances are presumed to be valid, and grants of municipal power are to be liberally construed. *City of Bothell v. Gutschmidt*, 78 Wn. App. 654, 659-60, 898 P.2d 864 (1995). Similarly, the person challenging an ordinance bears the burden of proving that the ordinance is unconstitutional. *Id.* at 660. Nevertheless, an ordinance will be found to be invalid (1) if a general statute preempts city regulation of the subject or (2) if the ordinance directly conflicts with a statute. *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991).

### A. Preemption

A city is preempted from enacting ordinances if the legislature has expressly or by implication stated its intention to preempt the field. *Brown*, 116 Wn.2d at 560. When the legislature has expressly stated its intent to preempt the field, a city may not enact any ordinances affecting the given field. *See id.* However, if the legislature is silent regarding its intent, the court must consider both "the purposes of the statute and . . . the facts and circumstances upon which the statute was intended to operate" in order to determine the intent of the legislature. *Id.*

Under RCW 41.04.180, the City of Vancouver has authority to provide medical benefits to its employees and their dependents. Since the legislature did not define the term "dependents," we conclude that the legislature del-

egated authority to the city to determine who should be eligible for benefits. *See Arlington County v. White*, 259 Va. 708, 711-12, 528 S.E.2d 706,708 (2000) (holding that the county necessarily had the power to determine who qualified as a dependent when the state legislature failed to define the term "dependent" in a similar statute); *see also Hite v. Pub. Util. Dist. No. 2*, 112 Wn.2d 456, 458-59, 772 P.2d 481 (1989) (noting that "[a] municipal corporation's powers are limited to those necessarily or fairly implied in or incident to powers expressly granted by statute"). We recognize that the city has a strong interest in retaining qualified employees and that the regulation of employee benefits has traditionally been treated as a local interest. *See State ex rel. Beck v. Carter*, 2 Wn. App. 974, 979-81, 471 P.2d 127 (1970) (noting that municipalities have the authority to regulate employee compensation); *Ayers v. City of Tacoma*, 6 Wn.2d 545, 554, 108 P.2d 348 (1940) (holding that cities have the authority to implement employee pension programs); *see also Schaefer v. City & County of Denver*, 973 P.2d 717, 719 (Colo. Ct. App. 1998) (explaining that "the authority to define the scope of employee compensation, including benefits, is of particular importance to a local government because of its impact on a city's ability 'to both hire and retain qualified individuals' " (quoting *Colo. Springs Fire Fighters Ass'n v. City of Colo. Springs*, 784 P.2d 766, 773 (Colo. 1989)); *Crawford v. City of Chi.*, 304 Ill. App. 3d 818, 827, 710 N.E.2d 91, 98 (concluding that the power to extend benefits to city employees is essentially a local concern and that cities must be able to offer good employment benefits in order to be able to hire and retain qualified individuals), *appeal denied*, 185 Ill. 2d 621, 720 N.E.2d 1090 (1999). We also recognize that the State of Washington provided for home rule charters in order to allow cities to operate economically and efficiently. *See City of Seattle v. Auto Sheet Metal Workers Local 387*, 27 Wn. App. 669, 683-84, 620 P.2d 119 (1980), *overruled on other grounds by City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 833 P.2d 381 (1992). For all these reasons, we conclude that the legislature did not intend to preempt the

City of Vancouver from providing a reasonable definition of "dependent."

■ In addition, Heinsma argues that the city's recognition of domestic partnership is preempted because the legislature has a paramount interest in defining and regulating familial relationships. The legislature has enacted several different laws defining and regulating marriage in Title 26 RCW; however, we conclude that the city's recognition of domestic partnership in no way affects the state's ability to regulate familial relationships.[3] For example, the city enables domestic partners of its employees to receive insurance benefits, but the domestic partners do not thereby become eligible to receive any other legal benefits that the state has extended to married couples.[4] Similarly, the city's recognition of domestic partnership is limited to its employee benefits program. As the trial court noted, "[o]nce the employment relationship is terminated the status of domestic partnership ceases." Clerk's Papers at 341. The trial court concluded that the city's recognition of domestic partnership did not create the equivalent of marriage in the State of Washington. Like the trial court, we conclude that the city's recognition of domestic partnership is limited in scope and does not affect the legislature's ability to regulate familial relationships on a statewide basis. *See Slattery v. City of New York*, 266 A.D.2d 24, 25,

---

[3] Heinsma argues that the city's recognition of domestic partnership duplicates marriage because the requisites for domestic partnership parallel the requisites for marriage. For example, domestic partners must (1) have only one partner, (2) be at least 18 years old, (3) not be closer related by blood than would bar a marriage, and (4) be legally competent. *See supra* note 1; RCW 26.04.010(1), .020(1)(a)-(b), .130. Although these requisites may parallel each other, we conclude that fundamental differences exist between marriage and domestic partnership as defined by the City of Vancouver. For example, the domestic partner only receives insurance benefits whereas a spouse receives many other legal rights and responsibilities. In addition, domestic partners may terminate their relationship by simply filing a termination statement whereas a married couple must enter into divorce proceedings. *See* ch. 26.09 RCW. Finally, couples wishing to marry must obtain a license whereas domestic partners may simply file an affidavit. *See* RCW 26.04.140.

[4] For example, the trial court noted that "a domestic partner as qualified by the city would not be entitled to Social Security benefits; would not be required to join on any real estate transactions; or be liable for the debts incurred by their partner." Clerk's Papers at 341.

697 N.Y.S.2d 603, 605 (1999) (concluding that extending benefits to domestic partners did not transform the relationship into a common law marriage and that substantial differences exist between marriage and domestic partnership), *appeal dismissed*, 94 N.Y.2d 897, 706 N.Y.S.2d 699 (2000).

## B. Conflict

Since we have concluded that the field was not preempted, we must also consider whether the city's definition of "dependents" conflicts with other general statutes. When considering an undefined statutory term, the court will consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions. *In re Pers. Restraint of Piercy*, 101 Wn.2d 490, 492, 681 P.2d 223 (1984). In addition, the court may refer to a dictionary to give meaning to a nontechnical word that the legislature did not define within a statute. *City of Seattle v. Williams*, 128 Wn.2d 341, 349, 908 P.2d 359 (1995). When considering whether an ordinance violates article XI, section 11, the court will consider an ordinance to be invalid on grounds of conflict only if the ordinance "directly and irreconcilably conflicts with the statute." *Brown*, 116 Wn.2d at 561. Similarly, a statute will not be construed as restricting a municipality's authority to enact an ordinance if the ordinance and the statute can be harmonized. *Id.* at 563.

The term "dependent" has been defined in a variety of ways, and the City of Vancouver argues that, as a home rule city, it should be given broad discretion to define this term. The court has previously defined a dependent as "one who looks to another for support and maintenance, one who is in fact dependent, [or] one who relies on another for the reasonable necessities of life." *Childers v. Childers*, 89 Wn.2d 592, 598, 575 P.2d 201 (1978). Referring to several different sources, the term "dependent" has also been defined as follows:

(1) "[T]he spouse of the employee, the dependent child

and dependent parent of the employee or of the employee's spouse and, in addition, with respect to state employees, includes a state employee's domestic partner and domestic partner's dependent child or dependent parent." H.B. 2037, 56th Leg., Reg. Sess. § 1(7) (Wash. 1999).

(2) "[A] person who, because of physical or mental disability, or because of extreme advanced age, is dependent upon another person to provide the basic necessities of life." RCW 9A.42.010(4).

(3) "[R]eceiving one-half or more of support from a member." RCW 41.32.010(8).

(4) "[O]ne relying on another for support." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 604 (1976).

(5) "Relying on or requiring the aid of another for support [or] [o]ne who relies on another especially for financial support." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 501 (3d ed. 1992).

(6) "One who relies on another for support; [or] one not able to exist or sustain oneself without the power or aid of someone else." BLACK'S LAW DICTIONARY 449 (7th ed. 1999).

From all these definitions, we conclude that to be a "dependent" requires some degree of reliance between two parties and that the one party provides some degree of financial support to the other. The City of Vancouver's inclusion of domestic partners as dependents is consistent with this definition because the domestic partners have joint responsibility for basic living expenses. Because the city employees are jointly responsible for these costs, the domestic partners may *rely* on their employee-partners to contribute *financial* resources to provide for their mutual *support*, or basic living expenses.

Heinsma argues that the inclusion of domestic partners as dependents conflicts with the plain meaning of "dependents." Specifically, Heinsma argues that a domestic partner is neither a legal nor a financial dependent. Heinsma

defines a legal dependent as a person for whom another person has a duty of support, such as a minor child. On the other hand, Heinsma defines a financial dependent as a person for whom another person provides actual financial support. Because the benefits program does not require that domestic partners contribute equally or jointly to the cost of living expenses, Heinsma argues that domestic partners do not qualify as financial dependents. Without a showing of financial support from the city employee, Heinsma argues that a domestic partner does not qualify as a dependent within the meaning of RCW 41.04.180.

Such a narrow construction would be inconsistent with our approach for determining the validity of an ordinance. First, grants of municipal power are to be construed liberally, rather than narrowly, in favor of constitutionality. *Gutschmidt*, 78 Wn. App. at 659. Second, municipal ordinances and statutes are to be harmonized if possible. *Brown*, 116 Wn.2d at 563. Third, the court gives considerable weight to a statutory interpretation by a party who has been designated to implement the statute. *Seattle Newspaper-Web Pressmen's Union Local No. 26 v. City of Seattle*, 24 Wn. App. 462, 467, 604 P.2d 170 (1979). Finally, the City of Vancouver is a first class city with broad legislative powers. *See Winkenwerder v. City of Yakima*, 52 Wn.2d 617, 622, 328 P.2d 873 (1958). Thus, we conclude that the city's inclusion of domestic partners in its employee benefits program is consistent with the plain meaning of "dependents" as expressed in RCW 41.04.180.

## CONCLUSION

We conclude that the City of Vancouver's benefit program does not violate article XI, section 11 of the state constitution. Heinsma has failed to show that the legislature intended to preempt the city from defining "dependents" as including domestic partners. Similarly, Heinsma has failed to show that the city's inclusion of domestic partners conflicts with the requirements of RCW 41.04.180. Because

the regulation of employee benefits is a matter of local concern, we recognize that cities should have great latitude in implementing their employee benefits programs, especially when they have received specific delegated authority from the legislature. Finally, we conclude that the city's recognition of domestic partnership is limited and that the program does not unconstitutionally interfere with the legislature's ability to regulate familial relationships on a statewide level.

We affirm the decision of the trial court.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.

SANDERS, J. (dissenting) —

[W]hatever the consequences we must accept the plain meaning of plain words.[5]

Here the majority strains to arrive at a politically correct result. Yet appropriate application of state statutes is more than an Alice-in-Wonderland exercise of simply making words mean what we, or municipalities, choose them to mean.[6] It is up to the state legislature to set public policy and it is the obligation of this court, and municipalities, to be true to those legislative enactments absent constitutional infirmity.

Here the legislature has spoken directly to the issue presented:

Any county, municipality, or other political subdivision of the

---

[5] Mr. Justice Oliver Wendell Holmes, Jr., *United States v. Brown*, 206 U.S. 240, 244, 27 S. Ct. 620, 51 L. Ed. 1046 (1907).

[6] *State ex rel. Bond v. State*, 59 Wn.2d 493, 503, 368 P.2d 676 (1962) (Rosellini, J., dissenting) (emphasis added) (quoting *Alice in Wonderland*):

"When I use a word," Humpty Dumpty said, in rather a scornful tone, "it *means* just what I choose it to *mean*—neither more nor less."

"The question is," said Alice, "whether you can make *words mean* so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

state acting through its principal supervising official or governing body may, whenever funds shall be available for that purpose provide for all or a part of hospitalization and medical aid *for its employees and their dependents* through contracts with regularly constituted insurance carriers . . . .

RCW 41.04.180 (emphasis added).

However the City of Vancouver has extended health care benefits to "domestic partners" who

are jointly responsible for basic living expenses which means the cost of basic food, shelter and any other expenses of a domestic partner which are paid at least in part by a program or benefit for which the partner qualified because of the domestic partnership. The domestic partners need not contribute equally or jointly to the cost of these expenses as long as they agree that both are responsible for the total cost . . . .

Clerk's Papers (CP) at 59. Notwithstanding the majority's implication to the contrary, majority at 562-63, the plan does not purport to define "dependent," nor does it even use the term.

Pages of policy-laden argument set forth the majority's view that provision of benefits to "domestic partners," so defined, is a worthy enterprise. Yet the question still remains, as the majority phrases it, whether "inclusion of domestic partners in its employee benefits program is consistent with the plain meaning of 'dependents' as expressed in RCW 41.04.180." Majority at 566. That is the only issue.

I think the majority is on the right track when it attempts to inventory various definitions of "dependent," and I do not seriously quarrel with its conclusion that " 'dependent' requires some degree of reliance between two parties and that the one party provides some degree of financial support to the other." Majority at 564-65. The question is therefore whether the Vancouver plan limits extended health care benefits to its employees and those domestic partners receiving "some degree of financial support" from those employees. The majority asserts the plan is consistent with

the state statute which limits those benefits to "its employees and their dependents"

> because the domestic partners have joint responsibility for basic living expenses. Because the city employees are jointly responsible for these costs, the domestic partners may *rely* on their employee-partners to contribute *financial* resources to provide for their mutual *support*, or basic living expenses.

Majority at 565.

I disagree. What the majority fails to consider, and the plan fails to require, is that the city-employed partner actually support or even contribute support to the noncity-employed partner. Although by definition domestic partners must be "jointly responsible" for some living expenses, the plan also expressly qualifies that the domestic partners "need not contribute equally or jointly to the cost of these expenses as long as they agree that both are responsible for the total cost." CP at 59. For that matter, there is no requirement that the city employee contribute anything at all.

Joint responsibility of partners to a third party creditor tells us precisely nothing about whether one partner is dependent upon the other partner. It very well may be that one partner does support the other partner; however, that is not a necessary precondition under the plan to receive benefits. Yet dependency *is* clearly a precondition to the receipt of benefits under the state statute.

Nor does the plan even suggest that it is the city employee who must provide "some degree of financial support to the" noncity-employee. Majority at 565. It could be the other way around: The noncity-employee might pay 100 percent of the living expenses of the city employee but still be eligible for benefits under the plan. Unless we live in Alice's Wonderland where up may be down, I posit by any reasonable definition of the term, the city employee, not his or her nonemployee partner, is the "dependent" for the purpose of this example.

Of course it may be that the domestic partners each

contribute their fair share to common expenses from their separate resources. This would mean, under the plain meaning of the term, neither would be the dependent of the other. Nevertheless benefits would flow under the plan contrary to state statute which limits such benefits to "dependents."

I need not quarrel with the majority's view that a financially dependent relationship may exist between same sex partners as well as different sex couples who are not, and lawfully cannot be, wed. However, joint liability to a third party creditor does not tell us who is the dependent, if anyone. I would therefore redirect the efforts of the City of Vancouver to the state legislature and encourage my colleagues to honor, not defeat, the plain meaning of the written word, no matter how much they may disagree with the legislation which incorporates it.