Honorable Jeff Morris State Representative, 40th District P.O. Box 40600 Olympia, WA 98504-0600
Dear Representative Morris,
By letter previously acknowledged, you have requested an opinion on the following paraphrased question:
 Do cities, towns, and counties have the authority to provide telecommunications services to their residents?
Specifically, you ask for a review and an update to AGO 53-55 No. 273, which concluded that a city was not authorized to own or operate a telephone system.[1]
 BRIEF ANSWER
The answer to your question depends on the extent to which a municipal government may exercise "home rule" powers. First-class and code cities and charter counties may offer telecommunications services to their residents to the extent not specifically barred by state statute. These municipalities, often described as having "home rule" powers, do not need express or implied statutory authority to enact local legislation. Other classes of cities, towns, and counties are limited to those powers granted by statute, and since there is no statute providing authority to provide telecommunications services, they lack statutory authority to provide telecommunications services to the public. We overrule AGO 1953-55 No. 273 to the extent it is inconsistent with this opinion.
 ANALYSIS
A. Definition Of "Telecommunications"
In your question, you ask whether municipalities (specifically to cities, towns, and counties) are authorized to be in the telecommunications business. To answer your question, we first must address the meaning of "telecommunications."
For purposes of regulating telecommunications companies, state law broadly defines "telecommunications" as:
 [T]he transmission of information by wire, radio, optical cable, electromagnetic, or other similar means. As used in this definition, "information" means knowledge or intelligence represented by any form of writing, signs, signals, pictures, sounds, or any other symbols.
RCW 80.04.010 (defining "telecommunications" for purposes of laws regulating telecommunications companies).[2] For ease of reference, we will adopt this definition of the term.
B. General Rules Regarding The Authority Of Cities, Towns, And Counties
As a preliminary matter, there are several classifications of cities, towns, and counties under Washington law. There are first class cities, second class cities, code cities, unclassified cities, and towns. The classification of cities stems from the Washington Constitution, which provides, in relevant part:
 Any city containing a population of ten thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state[.]
Const. art XI, § 10. First class cities are those that have adopted a charter pursuant to this provision. RCW 35.01.010. Second-class cities and towns do not have their own charters but are governed by a statutory scheme set forth primarily in RCW Title 35.[3] Unclassified cities include those created by special charter prior to adoption of the state constitution (RCW 35.30.010) and statutory enactments supplement the powers they derive from their territorial charters. Finally, "code cities" are those which were incorporated, or have re-incorporated, under an Optional Municipal Code originally enacted in 1967. Laws of 1967, Ex. Sess., ch. 119, codified as RCW Title 35A.
Counties also vary as to the extent of their local legislative powers. The Washington Constitution allows any county to "frame a `Home Rule' charter" for its own government subject to the Constitution and laws of this state". Const. art. XI, § 4.[4] Those counties that have not adopted charters are governed by a statutory framework which is primarily codified in RCW Title 36.
With respect to all municipal corporations, the general rule is that they are limited to those powers expressly granted by statute, those powers necessarily or fairly implied in or incident to powers expressly granted, and those powers essential to the declared purposes and objects of the corporation. Port of Seattle v. Wash. Utils. Transp.Comm'n, 92 Wn.2d 789, 794-95, 597 P.2d 383 (1979). "If there is a doubt as to whether the power is granted, it must be denied." Id. at 795 (citations omitted).
However, this general rule does not apply to cities and counties that have adopted charters pursuant to the Washington Constitution (Const. art. XI, §§ 4, 10) or to cities operating under the optional municipal code ("code cities"). RCW 35A.11.020.[5] These cities and counties (first class cities, code cities, and charter counties) have legislative powers analogous to those of the state, except they cannot contravene any constitutional provision or state statute. Winkenwerder v. City ofYakima, 52 Wn.2d 617, 622, 328 P.2d 873 (1958). These municipalities, often described as having "home rule" powers, do not need express or implied statutory authority to enact local legislation.
Despite their broad powers, the Washington Supreme Court has held that first class and code cities are not exempt from legislative control:
 [A]t least when the interest of the State is paramount to or joint with that of the municipal corporation, the municipal corporation has no power to act absent a delegation from the legislature.
Massie v. Brown, 84 Wn.2d 490, 492, 527 P.2d 476 (1974) (citations omitted). In addition, a first class or code city's authority is preempted when the Legislature adopts a law concerning a particular interest, unless the Legislature has left room for concurrent jurisdiction. Heinsma v. City of Vancouver, 144 Wn.2d 556, 560, 29 P.3d 709
(2001). A city ordinance will be invalid (1) if a general statute preempts city regulation of the subject or (2) if the ordinance directly conflicts with a statute. Id. at 561.
The scope of a municipal corporation's powers also may depend on whether the powers are governmental or proprietary. Hite v. Pub. Util. Dist. 2,112 Wn.2d 456, 459, 772 P.2d 481 (1989). Proprietary powers are more broadly defined than governmental powers. Where a municipal corporation is authorized to conduct a business, it may exercise its business functions in much the same way as a private entity. City of Tacoma v.Taxpayers of Tacoma, 108 Wn.2d 679, 694, 743 P.2d 793 (1987). The provision of a product or service to the public — such as water, electricity, natural gas, or telecommunications — is a proprietary, rather than a governmental, function of a city or county.Id. at 694.
C. Authority Of "Home Rule" Cities And Counties To ProvideTelecommunications Services
As stated above, "home rule" cities and counties have broad, though not unlimited, legislative powers. The Washington Constitution states that providers of telephone services are common carriers subject to control by the Legislature. Const. art. XII, § 19. Telecommunications businesses are public utilities and are regulated by the state to varying degrees. RCW 80.01.040(3). Thus, the state has enacted statutes regulating telecommunications services. However, these statutes neither expressly permit nor expressly prohibit cities and counties from providing such services.
The Legislature has authorized cities and towns to provide certain utilities such as electricity, gas, water, sewerage, and solid waste services. See RCW 35.92.010 (any city or town may provide water to end users); 35.92.020 (city or town authorized to provide sewerage and solid waste services to end users); 35.92.050 (city or town authorized to provide electricity and gas to end users); RCW 35A.80.010 (code city may provide utility service to extent authorized by general laws). Counties are authorized to provide a number of services to their residents, including transportation (RCW 36.57 and 36.57A), solid waste disposal (RCW 36.58), hospitals (RCW 36.62), and water-sewerage-drainage systems (RCW 36.94).
Neither cities, towns, nor counties are specifically authorized to provide telecommunications services. The question also arises whether the list of permitted utilities set forth in statute is exclusive, creating the inference that the Legislature did not intend for cities or counties to provide any services beyond those authorized by various statutes.
This point was considered in City of Issaquah v. Teleprompter Corp.,93 Wn.2d 567, 611 P.2d 741 (1980), in which Issaquah, a city operating under the Optional Municipal Code, had established and operated a cable television system serving the city's residents, taking over franchises previously held by a private cable company. The cable company challenged the city's acts, and the state supreme court upheld the city. The court found that providing cable television service was of appropriate local concern to be the subject of city legislation, and that the state had not preempted the field by declaring it a paramount state concern. Id. at 572-575.[6] The court also rejected several other statutory and constitutional objections. Issaquah establishes that "home rule" cities and counties do not need express statutory authority to exercise their legislative authority.
As to "home rule" governments, then, the question is whether the state has enacted a "general law" that supersedes or controls the exercise of legislative authority. None of the Legislature's enactments purport to prohibit cities or counties from providing telecommunications services, and none are so sweeping and comprehensive as to leave no room for local legislation. We note also that courts in two other jurisdictions have upheld the authority of "home rule" local governments to provide telecommunications services. GTE Northwest, Inc. v. Oregon Pub. Util.Comm'n, 179 Or. App. 46, 39 P.3d 201 (2002); In re Application of LincolnElec. Sys., 655 N.W.2d 363 (2003). The Oregon case involved a county with "home rule" powers, and the Nebraska case involved a charter city with "home rule powers."[7] Therefore, we conclude that "home rule" cities and counties may provide telecommunications services except as may be limited by specific statutory language governing particular services.
In AGO 1953-55 No. 273, we concluded that first class cities lacked authority to provide telephone service to their residents. Although the opinion specifically noted that first class cities were under discussion, it included no analysis of the effect of first class "home rule" powers on the question. To the extent that AGO 1953-55 No. 273 is inconsistent with this opinion, we overrule it.
D. Authority Of Second Class Cities, Towns, And Non-Charter Counties ToProvide Telecommunications Service
As noted above, the Legislature has not expressly authorized such entities to engage in such business, nor is the provision of telecommunications necessarily implied or incident to the provision of authorized services. In addition, the authority of second class cities and towns is more limited than the authority of first class and code cities. Like most municipal corporations (and unlike the home-rule governments discussed above), second-class cities, towns, and non-charter counties cannot exercise powers except those expressly granted by the Legislature or those necessarily implied from granted powers. See, e.g.,Sundquist Homes, Inc. v. Snohomish Cy. Pub. Util. Dist. 1, 140 Wn.2d 403,997 P.2d 915 (2000); Town of Othello v. Harder, 46 Wn.2d 747, 284 P.2d 1099
(1955). Therefore, in the absence of any express legislation authorizing these categories of municipal corporations to provide telecommunications services, we conclude that they may not lawfully do so.[8]
We trust that the foregoing will prove useful to you.
Sincerely,
 SHANNON E. SMITH Assistant Attorney General
[1] Your original question was whether municipalities had authority to "be in the telecommunications business." This is a very broad term, and it potentially covered many unlikely possibilities. From the context of your letter and from general knowledge about proposals municipalities have considered, we limit our analysis to cities or counties seeking to provide telecommunications services to the general public rather than other forms of "telecommunications business."
[2] This definition also applies to those statutes authorizing public utility districts and port districts to construct and operate telecommunications facilities for wholesale. RCW 53.08.005(2);54.16.005(2). Port districts and public utility districts are authorized to construct and operate telecommunications facilities for their own use and for wholesale. RCW 53.08.370; 54.16.330. In granting this authority, the Legislature expressly provided that neither port districts nor public utility districts may provide telecommunications services to end users.Id.
[3] RCW 35.23 contains provisions applying specifically to second-class cities, and RCW 35.27 contains provisions applying to towns.
[4] A county and one or more cities may also form a combined city-county government (with "home rule" powers) through a constitutional charter process. Const. art. XI, § 16. However, as of this date, no city-county governments have been created under this provision.
[5] Code cities with a population of 10,000 or more may adopt a charter, but they are not required to do so. RCW 35A.01.030.
[6] The plaintiff in the Issaquah case argued that "home rule" citiescould not operate any utilities beyond those listed in statute.Issaquah, 93 Wn.2d at 574. The Issaquah court found that the cabletelevision system was not a utility (based on the representations of theparties before the court) and thus did not reach the question whether acity could operate a utility other than those specifically authorized bystatute. Id. at 574-575. The court's decision did not appear to turn onthis point, however. We conclude that the analysis is the same whetherthe provision of a particular telecommunications service is a utility ornot.
[7] The Nebraska court also found that a federal statute independentlyprovides a basis for a municipality to provide telecommunications serviceand that this law preempts any contrary state law. Courts and othertribunals have differed on whether the federal statute barring statesfrom prohibiting "any entity" to provide telecommunications servicespreempts state laws that preclude municipalities from providing suchservices. See, e.g., City of Abilene, Texas v. F.C.C., 164 F.3d 49 (D.C.Cir. 1999); Iowa Tel. Ass'n v. City of Hawarden, 589 N.W.2d 245 (Iowa1999); City of Bristol v. Earley, 145 F. Supp.2d 741 (W.D.Va. 2001).Whether "any entity" includes municipalities is thus not a settledquestion and will not be addressed here. Certiorari has been granted bythe United States Supreme Court on this issue in Nixon v. F.C.C., U.S. Supreme Court Docket No. 02-1386.
[8] Of course, the Legislature is free to expand or limit the powers of cities, towns, and counties in the area, should it choose to do so. For reasons discussed in the main text, any limitations on the powers of "home rule" municipalities would need to be spelled out in statute. As to "non home rule" governments, new statutory language would be needed to authorize and define the services such governments would be allowed to provide.