[No. 46015.   En Banc.   May 22, 1980.]

KING COUNTY COUNCIL, ET AL, *Appellants,* v. PUBLIC
DISCLOSURE COMMISSION, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Raymond B. Ferguson, Assistant Chief Deputy,* for appellants.

*Slade Gorton, Attorney General,* and *James R. Tuttle, Assistant,* for respondent.

WRIGHT, J.—This is a direct appeal from the Superior Court's affirmance of the Public Disclosure Commission's (commission) decision that four members of the King County Council (council) violated RCW 42.17.130 by voting to endorse a ballot measure. That statute prohibits the use of the facilities of a public office to promote or oppose an individual's candidacy or a ballot proposition. We reverse.

On October 31, 1977, the council held a public hearing at which 12 citizens were heard. Some spoke for and others against the motion to endorse Initiative No. 335, a statewide antipornography ballot measure. Council members debated and the motion passed by a 4-to-3 vote.

The legislature subsequently amended the provisions of RCW 42.17.130 to allow ballot measure endorsements under certain circumstances.[1] However, the only exception to the statute's general prohibition at the time relevant

---

[1]RCW 42.17.130 was amended as follows:

((<del>(1)</del>)) No elective official nor any employee of his office nor any person appointed to or employed by any public office or agency may use or authorize the use of any of the facilities of a public office or agency, directly or indirectly, for the purpose of assisting a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition. Facilities *of public office or agency* include, but are *not limited to,* use of stationery, postage, machines, and equipment, use of employees of the office or agency during working hours, vehicles, office space, publications of the office or agency, and clientele lists of persons served by the office or agency: PROVIDED, That the foregoing provisions of this section shall not apply to ((<del>those</del>)) <u>the following activities:</u>

<u>(1) Action taken at an open public meeting by members of an elected legislative body to express a collective decision, or to actually vote upon a motion, proposal, resolution, order, or ordinance, or to support or oppose a ballot proposition so long as (a) any required notice of the meeting includes the title and number of the ballot proposition, and (b) members of the legislative body</u>

read: "[T]he foregoing provisions of this section shall not apply to those activities which are part of the normal and regular conduct of the office or agency." Therefore, we must determine if the endorsement was part of the "normal and regular conduct" of the council.[2]

The Attorney General has construed "normal and regular" to mean more than merely lawful. Attorney General Opinion, November 17, 1975, at 8. Otherwise, the use of both words would not be necessary. Every word in a statute is given full meaning wherever possible. *State v. Wanrow,* 88 Wn.2d 221, 228, 559 P.2d 548 (1977); *State v. Lundquist,* 60 Wn.2d 397, 403, 374 P.2d 246 (1962).

Since "normal" and "regular" are not statutorily defined, they should be given their ordinary meaning. *Pacific First Fed. Sav. & Loan Ass'n v. State,* 92 Wn.2d 402, 409, 598 P.2d 387 (1979); *Publishers Forest Prods. Co. v. State,* 81 Wn.2d 814, 816, 505 P.2d 453 (1973). "Normal" means usual or customary. Attorney General Opinion, November 17, 1975, at 8; *United States v. Fallbrook Pub. Util. Dist.,* 109 F. Supp. 28, 38 (S.D. Cal. 1952). "Regular" means lawful or conducted in conformity with established rules. Attorney General Opinion, November 17, 1975, at 3 n.2; *Webster's Third New International Dictionary* 1913 (1971); *McBrayer v. Columbia Cas. Co.,* 44 Ga. App. 59, 61, 160 S.E. 556, 558 (1931); *Myers v. Rasback,* 4 How. Pr. 83,

---

or members of the public are afforded an approximately equal opportunity for the expression of an opposing view;

(2) A statement by an elected official in support of or in opposition to any ballot proposition at an open press conference or in response to a specific inquiry;

(3) Activities which are part of the normal and regular conduct of the office or agency.

Laws of 1979, 1st Ex. Sess., ch. 265, § 2.

[2]Neither party is urging that this action is moot as a result of the amendment of RCW 42.17.130. While the parties could not stipulate away a mootness issue, it is apparent this action is not moot. The Attorney General correctly points out appellants are entitled to appellate review of the commission's determination that RCW 42.17.130—as it then read—was violated.

85 (N.Y. Sup. Ct. 1849). Because the words are in the conjunctive, to come within the exception an action must be both "normal" and "regular".

A number of factors show the endorsement was "normal." The council had passed similar motions on numerous occasions. In the 5 years immediately before this endorsement, it supported or opposed ballot measures at least 13 times. Endorsements also were made by other governmental bodies in the area, including the Seattle City Council.

Furthermore, local legislative bodies frequently pass resolutions which are merely "an expression of the opinion or mind of the official body . . ." *Baker v. Lake City Sewer Dist.*, 30 Wn.2d 510, 518, 191 P.2d 844 (1948). The legislature similarly passes memorials urging congressional action. The endorsement in question differs little from a resolution or memorial. Finally, the conduct was procedurally normal or usual because the motion was routinely handled. The findings and the better reasoning unquestionably indicate the endorsement was "normal."

We turn next to whether the action was "regular." Although the powers of many public officials are limited to those expressly granted, this principle does not apply to a home rule county council. Const. art. 11, § 4 (amendment 21) permits a county to adopt a charter for its own government. That provision states "[a]ny county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state . . ."

In *Winkenwerder v. Yakima,* 52 Wn.2d 617, 328 P.2d 873 (1958), the court interpreted a similar provision[3] which applies to certain cities. The court said at page 622:

> [T]he only limitation on the power of cities of the first class is that their action cannot contravene any constitutional provision or any legislative enactment. . . . a city of the first class has as broad legislative powers as the

---

[3]Const. art. 11, § 10 (amendment 40) states in part:

. . . Any city containing a population of ten thousand inhabitants, or more, shall be permitted to frame a charter for its own government, consistent with and subject to the Constitution and laws of this state . . .

state, except when restricted by enactments of the state legislature.

(Citations omitted.) We conclude that charter counties, correspondingly, have the same broad powers.

The King County charter contains two applicable provisions. Section 220.20 reads in part:

> The county council shall be the policy determining body of the county and shall have all legislative powers of the county under this charter. The county council shall exercise its legislative power by the adoption and enactment of ordinances; . . . shall have the power to conduct public hearings on matters of public concern to assist it in performing its legislative responsibilities . . . The specific statement of particular legislative powers shall not be construed as limiting the legislative powers of the county council.

Section 240 provides in part: "The county council may pass motions . . . to make declarations of policy which do not have the force of law . . ."

■ While the endorsement of initiative measures is not listed among the council's legislative powers, the language of section 220.20 is extremely broad and may embrace the council's action. Section 240 clearly encompasses the endorsement. "Policy" includes a specific decision designed to carry out a chosen course of action. *Webster's Third New International Dictionary* (1971). The endorsement of a ballot measure aimed at curtailing pornography is a declaration of policy; it is a specific decision without the force of law to back a proposed method of pornography control.

In view of the foregoing, we conclude the action of the council was lawful and therefore "regular."[4]

Three constitutional questions have been raised by respondent commission. The commission argues the county council's endorsement violates: (1) Const. art. 7, § 1 (amendment 14) because it amounts to an expenditure of public money for private purposes; (2) Const. art. 1, § 19,

---

[4]This holding does not extend to endorsements by legislative bodies of non-charter local governmental entities.

which states all elections shall be "free and equal"; and (3) the First Amendment and Const. art. 1, § 4, which guarantee the rights to petition and initiative.

## PUBLIC MONEY

■ Const. art. 7, § 1 (amendment 14) provides in part: ". . . All taxes . . . shall be levied and collected for public purposes only." The same limitation is imposed by this provision upon the *expenditure* of public money. *State ex rel. Collier v. Yelle,* 9 Wn.2d 317, 326, 115 P.2d 373 (1941). The Attorney General has advised that state expenditures for an individual's candidacy would not be for a public purpose. Attorney General Opinion, February 16, 1979, at 4; Attorney General Opinion, July 7, 1976, at 5–6. But these opinions evaluate the use of college facilities on behalf of candidates rather than ballot measure endorsements.

The commission relies upon a New York decision holding the funding of campaign flyers and radio and television advertisements by a state agency is violative of constitutional prohibitions on giving or loaning money for private undertakings and prohibiting gifts of public funds (N.Y. Const. art. 7, § 8, Const. art. 8, § 1). *Stern v. Kramarsky,* 84 Misc. 2d 447, 375 N.Y.S.2d 235 (1975). A campaign was not waged in the instant case. The public hearing was not an expenditure in support of the initiative so the constitution has not been violated.

## FREE ELECTIONS

The commission next argues the endorsement interferes with the free election process.[5] It relies heavily upon *Stanson v. Mott,* 17 Cal. 3d 206, 551 P.2d 1, 130 Cal. Rptr. 697 (1976) in support of this argument. *Stanson* indicates the expenditure of state funds for campaign materials, travel expenses and a 3–person campaign staff to promote park bond act passage may violate the California "free election"

---

[5]The commission evidently believes the endorsement of the initiative violates Const. art. 1, § 19, which provides:

All Elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

provision.[6] The *Stanson* court stressed government neutrality in election campaigns is a fundamental precept of the democratic electoral process, pointing out the founding fathers feared officeholders would use official power to perpetuate themselves in office. *Accord, Stern v. Kramarsky, supra* (emphasizing the importance of government impartiality in campaigns).

In the present case, however, a public hearing was held on the motion. The only questionable action is the endorsement itself, which the New Jersey court apparently would approve where statutorily authorized. *Citizens to Protect Public Funds v. Board of Educ.*, 13 N.J. 172, 182, 98 A.2d 673, 678 (1953). Unlike *Stanson, Citizens to Protect Public Funds* and *Stern*, the council did not disseminate literature, purchase ads, or allow employees to campaign on work time. Because candidates were not endorsed, official power was not used improperly to perpetuate officials in office. The endorsement also served beneficial purposes, including generation of public interest and debate, informing citizens of their elected representatives' stands on the ballot issue and furtherance of local antipornography policy.

## First Amendment

The commission contends the endorsement interfered with the people's right to petition government[7] and to legislate by initiative.[8] It quotes *Mountain States Legal Foundation v. Denver School Dist. 1*, 459 F. Supp. 357 (D. Colo. 1978) as authority for its position. That memorandum

---

[6]Cal. Const. art. 2, § 2 states: "The Legislature shall . . . provide for . . . free elections."

[7]The First Amendment reads in part: "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the government for a redress of grievances."
    Const. art. 1, § 4 states: "The right of petition . . . for the common good shall never be abridged."

[8]Const. art. 2, § 1 states in part: "The first power reserved by the people is the initiative . . ."

opinion does not support the commission's argument. The primary issue there was the lack of statutory authority for the expenditure of public funds in a political campaign. The 1–judge court concluded in dictum the school board's expenditure of $2,000 to defeat an antispending initiative would violate the First Amendment and article 5, section 1 of the Colorado Constitution.[9]

In the present case, neither a significant campaign effort nor a conflict–of–interest situation is involved. The council did not support or oppose an initiative which would limit or expand its powers, like the Denver board. A constitutional amendment was not on the ballot, as in *Mountain States Legal Foundation.* There has not been a significant interference with citizens' rights to petition and initiative.

The statutory construction and constitutional questions have been resolved against the commission. Accordingly, we reverse the commission's decision finding the council members violated RCW 42.17.130 and the Superior Court's affirmance of that decision.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

---

[9]Colo. Const. art. 5, § 1 reads in part: ". . . The first power hereby reserved by the people is the initiative . . ."