Honorable Bill Finkbeiner State Senator, 45th District P. O. Box 40445 Olympia, WA 98504-0445
Dear Senator Finkbeiner:
By letter previously acknowledged, you have asked for an opinion on the following questions, which we have slightly paraphrased for clarity:
1. May RCW 58.04.007 be used to resolve any type of boundary dispute, or is the statute only meant to resolve a certain type of boundary dispute?
2. RCW 58.04.007 permits property owners to resolve a dispute about property boundary lines by a written document showing their agreement about the location of the boundary line, recorded as a real estate record. Does a charter county have authority to require county review before the written instrument can be recorded?
 BRIEF ANSWERS
RCW 58.04.007 is available to resolve disputes about property boundary lines where (1) the boundary line cannot be ascertained through a review of public records, monuments, or landmarks, or (2) there is an actual dispute between the property owners as to the location of the boundary line. A charter county has authority to facilitate the administration of RCW 58.04.007 (original page 2) and related statutes by imposing reasonable procedural requirements relating to the recording of written instruments establishing property boundaries.
 ANALYSIS
Your questions relate to interpretation of RCW 58.04.007, a statute setting forth optional procedures for resolving questions about the boundary lines separating adjoining parcels of land. This section provides:
Whenever a point or line determining the boundary between two or more parcels of real property cannot be identified from the existing public record, monuments, and landmarks, or is in dispute, the landowners affected by the determination of the point or line may resolve any dispute and fix the boundary point or line by one of the following procedures[.]
The statute then describes two procedures for resolving boundary disputes: (1) a written agreement signed by the affected property owners documenting the location of the point or line separating the parcels, signed and acknowledged in the manner required for a conveyance of real property and recorded with the real estate records of the county where the property is located; or (2) a court action to determine the boundary, filed under RCW 58.04.020. RCW 58.04.007 (1), (2). Your questions concern the circumstances under which the first of the two alternatives may be used.
1. May RCW 58.04.007 be used to resolve any type of boundary dispute, or is the statute only meant to resolve a certain type of boundary dispute?
It does not appear that the appellate courts have construed RCW58.04.007, and our examination of the legislative history of its enactment (Laws of 1996, ch. 160, § 3) did not provide insight beyond what can be gleaned from examining the text of the statute.
Where statutory language is unambiguous, the courts derive legislative intent from the text of the statute alone, construing it as a whole and giving effect to every provision. Schrom v. Bd for Volunteer Fire Fighters, 153 Wn.2d 19, 100 P.3d 814 (2004) (construing statutes defining eligibility of fire district employees for pension benefits). The text of RCW 58.04.007 provides a clear indication of the circumstances where this statute was intended to apply. First, the statute may be used when a "point or line" determining the boundary between two or more parcels of property cannot be identified based on existing records, monuments, and landmarks. Thus, the statute would not apply (for instance), where the boundaries of a parcel are established but the ownership of the parcel is in doubt.
Second, the statute applies when a point or line determining the boundary between two parcels is in dispute. The statute presupposes, then, an actual controversy between adjoining property owners as to the boundary line between their parcels. This point is underscored by the fact that before the enactment of RCW 58.04.007, litigation was the only way to resolve property line disputes.
(original page 3) In asking whether RCW 58.04.007 may be used to resolve any type of boundary dispute or is meant to resolve only certain kinds of disputes, your letter does not posit particular types of disputes that you may have in mind, and we can think of none other than those addressed by the statute, as discussed above. It seems apparent from the statutory language, however, that RCW 58.04.007 is limited to circumstances where a boundary line or point between parcels is objectively uncertain or where there is an actual dispute over the point or line that determines the boundary. The statute does not speak more broadly to address other circumstances that may give rise to changes in boundaries, such as subdivision of parcels, or other matters dealt with by different laws.
To illustrate these general principles, the following hypothetical cases might be considered:
Case 1: A and B are the owners of adjoining tracts of land. The deeds establishing the line between their property (recorded in territorial days) refer to certain monuments (an old cedar tree, a certain rock) that either no longer exist or cannot be identified.
Case 2: C and D own adjoining lots in a subdivision. C contends that a survey monument placed many years ago accurately marks the boundary between the lots. D contends that the monument has been moved and that a fence built by a previous owner is on the true boundary.
Case 3: E and F, sisters, have jointly inherited a parcel of land from their parents. Rather than continuing in joint ownership of the whole parcel, they hire a surveyor to divide the parcel into two equal portions.
Case 4: G is the owner of a 10-acre parcel of land. G proposes to divide the parcel into 10 one-acre lots and to convey six of these lots to H for a residential development. G and H, by walking the land and using a map of the property, reach agreement concerning the boundaries separating the lots.
It would appear that RCW 58.04.007 was designed for the situations illustrated in Case 1 and Case 2 above. In Case 1, the recorded property description cannot be understood without reference to the landmarks, and the landmarks can no longer be identified. A and B cannot determine where the line separating their property is located. Perhaps, with the help of a surveyor or with research concerning old records, they will be able to establish a line they can agree on without going to court. Similarly, C and D might find that a new survey will establish whether the survey monument or the fence is on the line between their lots, and they could record the results of the survey instead of resorting to litigation.
By contrast, RCW 58.04.007 does not cover Case 3 or Case 4 above. In Case 3, there is no uncertain boundary between adjoining parcels, nor is a boundary line in "dispute" between two landowners. Rather, the question is where to draw a new boundary line dividing a single (original page 4) existing parcel. Likewise, in Case 4, there is no "dispute" between existing landowners but rather an agreement concerning the subdivision of an existing parcel. Furthermore, in Case 4 at least, a subdivision into several lots implicates the platting and subdivision laws.
The hypothetical cases cited above are not intended to address any actual situations. They merely illustrate our view of the scope of RCW58.04.007.
2. RCW 58.04.007 permits property owners to resolve a dispute about property boundary lines by written document showing their agreement about the location of the boundary line, recorded as a real estate record. Does a charter county have authority to require county review before the written instrument can be recorded?
Your opinion request states that King County requires review of boundary line agreements before they are recorded under RCW 58.04.007, and your second question asks whether a county may enact such a requirement.
The function of an Attorney General Opinion is to provide legal analysis of questions relating to statutory interpretation but is not to provide legal comment on specific existing disputes. Accordingly, we will address the general matter of the authority of charter counties to adopt local laws on this subject, but we do not intend our analysis as a comment on any particular dispute.[1]
A charter county has broad legislative authority, except that its action may not contravene any constitutional provision or legislative enactment. Const. art. XI, § 4. King Cy. Coun. v. Disclosure Comm'n,93 Wn.2d 559, 611 P.2d 1227 (1980). We could discover no constitutional provision limiting the authority of counties to legislate concerning recording boundary line agreements, so the question becomes: Is such an ordinance precluded by state statute? Since the state statute here is RCW 58.04.007 itself, the question becomes: Does this statute preempt county legislation on the subject?
County legislation is preempted if it directly contravenes some provision of RCW 58.04.007 or some other statute. As one of the cases explains it, a local regulation conflicts with a statute when it permits what is forbidden by state law or prohibits what state law permits. Parkland Light Water Co. v. Tacoma-Pierce Cy. Bd. Of Health, 151 Wn.2d 420,70 P.3d 37, (2004). Thus, for instance, a county ordinance requiring that all boundary line disputes be resolved by the courts (and prohibiting the county real estate recording office from recording written agreements under any circumstances) would contravene the language of RCW 58.04.007 and would therefore be void. Courts are reluctant to interpret a state statute to preclude local legislation unless that is clearly the legislative intent. Weden v. San Juan Cy., 135 Wn.2d 678, 958 P.2d 273 (1998).[2]
(original page 5) In our view, RCW 58.04.007 leaves room for local legislation, particularly legislation designed to implement the statute and facilitate its administration. Since RCW 58.04.007 specifies only that the agreement be in written form, for instance, a charter county could enact requirements concerning the form of the written agreement (size of the document, what information it should contain, and where on the document each item should be located, etc.). Insofar as an ordinance providing for pre-recording county review may be concerned, we simply note that counties would appear to have considerable leeway in this area so long as the local legislation does not contravene the statute itself. For instance, an ordinance providing for review to determine whether a document presented for recording meets the requirements set forth in the statute (see discussion above) (or whether accepting a document for recording would be in conflict with some other state statute or state or local regulatory requirement[3]) would not necessarily be inconsistent with the statute. At least where a county can show that its ordinance serves a legitimate purpose and does not frustrate or negate the application of RCW 58.04.007 or other statutes, we believe the ordinance would be upheld.
We trust the foregoing will be of assistance to you.
Sincerely,
JAMES K. PHARRIS Senior Assistant Attorney General
:pmd
[1] Because King County is a charter county, we will analyze the law relating to charter counties and do not reach the question whether a noncharter county would have authority to adopt an ordinance of this type.
[2] We also conclude that the State, by enacting RCW 58.04.007, did not intend to "occupy the field" of legislation on boundary disputes, thus precluding local legislation on the subject. Compare this case with Cherry v. Mun. of Metro. Seattle, 116 Wn.2d 794, 808 P.2d 746 (1991), where the court noted that the state had expressly preempted the field of regulation of firearms possession (RCW 9.41.290) but still found that an employer could prohibit employees from carrying firearms on the job. See also City of Tacoma v. Naubert, 5 Wash. App. 856, 491 P.2d 652 (1971), holding that a state statute regulating sale of erotic material to minors preempted local regulations on the same subject. Local procedural regulations on boundary disputes are neither expressly preempted, as is the case with firearms, nor inherently inconsistent with the state statutes on the subject.
[3] For instance, suppose G and H, the property owners in hypothetical Case 4 above, presented for filing a written agreement resolving their "dispute" concerning boundaries of the lots created to further their development plans. Such a document (1) would be beyond the scope of RCW58.04.007 itself, (2) would also violate the platting and subdivision laws, and (3) might be inconsistent with local zoning or state growth management laws. Allowing such a document to be recorded could lead to confusion, at the very least, as to the status of the property in question. Thus, a county might require review to head off such potential problems.