Honorable Geoff Simpson State Representative, 47th District P.O. Box 40600 Olympia, WA, 98504-0600
Dear Representative Simpson:
By letter previously acknowledged, you have requested our opinion on the following paraphrased question:
 For purposes of applying RCW 42.17.130, may the elected board or commission of a Washington special purpose district, as part of its "normal and regular conduct," adopt a motion or resolution supporting or opposing a ballot proposition which the district's board determines to be related to the district's operations or to directly affect the interests of the district's taxpayers or ratepayers?
 BRIEF ANSWER
The governing bodies of special purpose districts lack authority to adopt motions or resolutions supporting or opposing ballot propositions. The Legislature has not granted such districts the authority to support or oppose ballot measures and, absent such authority, doing so would not constitute "normal and regular conduct." This conclusion does not extend to decisions by a governing body to request the placement of the district's own ballot measure onto the ballot when authorized by law, such as levy or annexation measures.
 ANALYSIS 1. Background.
Your question relates to RCW 42.17.130, which prohibits the use of public resources for specified political purposes. The statute currently provides, in pertinent part:
 [original page 2] No elective official nor any employee of his office nor any person appointed to or employed by any public office or agency may use or authorize the use of any of the facilities of a public office or agency, directly or indirectly, for the purpose of assisting a campaign for election of any person to any office or for the promotion of or opposition to any ballot proposition. Facilities of public office or agency include, but are not limited to, use of stationery, postage, machines, and equipment, use of employees of the office or agency during working hours, vehicles, office space, publications of the office or agency, and clientele lists of persons served by the office or agency: PROVIDED, That the foregoing provisions of this section shall not apply to the following activities:
 (1) Action taken at an open public meeting by members of an elected legislative body to express a collective decision, or to actually vote upon a motion, proposal, resolution, order, or ordinance, or to support or oppose a ballot proposition so long as (a) any required notice of the meeting includes the title and number of the ballot proposition, and (b) members of the legislative body or members of the public are afforded an approximately equal opportunity for the expression of an opposing view;
 (2) A statement by an elected official in support of or in opposition to any ballot proposition at an open press conference or in response to a specific inquiry;
 (3) Activities which are part of the normal and regular conduct of the office or agency.
RCW 42.17.130 (emphasis added).
As you note in posing your question, we recently considered the same statute in a formal opinion. In AGO 2005 No. 4, we construed the term "elected legislative body" as that term is used in the first of the three exceptions that this statute provides to the general prohibition against the use of public resources to support or oppose a ballot proposition. Under that first exception, an "elected legislative body" is expressly permitted to take action at an open public meeting to support or oppose a ballot proposition, provided that certain other conditions set forth in the statute are satisfied. RCW 42.17.130(1). We concluded, however, that this exception applies only to city and town councils, county councils, and county boards of commissioners, because the governing bodies of local special purpose districts are not "legislative" bodies for the purposes of this statute. AGO 2005 No. 4, at 6.
Based upon that conclusion, RCW 42.17.130(1) would not authorize the governing board of a special purpose district to adopt a resolution supporting or opposing a particular ballot measure. In drawing that conclusion, however, we noted that our opinion construed only the statute's first exception, noting the potential application of the third exception "to the extent that a particular measure actually relates to the functions of a particular special district." AGO 2005 [original page 3] No. 4, at 6 n. 9. You now pose the question that we suggested, but did not reach, in our earlier opinion.
2. General Principles and Threshold Matters.
As we did in our prior opinion, we begin by setting forth the basic principles governing the interpretation of RCW 42.17.130. The statute is structured as a prohibition against the use of public resources for political purposes, with three exceptions. In construing its terms, we view this prohibition with special strictness, given the long-standing rule that the use of public resources for political purposes is contrary to public policy and illegal in the absence of express authority. AGO 2005 No. 4, at 3 (quoting AGO 1975 No. 23, at 7). For similar reasons, we construe the statutory exceptions to the prohibition narrowly, reflecting the same public policy. Id.
Two characteristics of this statute are important to note. First, the statute relates to the use of public resources, not to actions that public officials may take without actually expending public resources. This includes expressions of personal opinion that do not involve use of the facilities of a public agency. WAC390-05-271(1). Second, the statute prohibits the use of public resources to aid one side or another of a ballot measure campaign; it does not prohibit efforts to provide information about a proposed measure where the office or agency providing the information would be affected, or where information is shared as part of its responsibilities. AGO 1994 No. 20, at 10 (citingCity of Seattle v. State, 100 Wn.2d 232, 247-48, 668 P.2d 1266
(1983)); see also AGO 1975 No. 23, at 13 (noting that the statute does not prohibit the use of public resources to provide information simply to explain the measure in relation to the functions of a particular office or agency). Neither does it prohibit making public facilities available on a nondiscriminatory, equal-access basis for political use. WAC390-05-271(2).
We note as a final threshold observation that our analysis relates to ballot measures that are proposed by people or entities other than the board itself. Special purpose districts often initiate ballot propositions themselves, commonly including measures related to local tax levies or proposals to annex territory. The act of proposing such measures to the ballot "might reasonably be taken as an endorsement of its contents by at least a majority of the board, a recommendation that would be authorized by the very nature of [its statutory] task." AGO 1994 No. 20, at 10; but see Brower v. State, 137 Wn.2d 44, 57-59,969 P.2d 42 (1998) (concluding that the Legislature may refer a measure to the ballot, leaving the final decision as to its enactment to the voters, even if the Legislature itself does not take a position on the measure). While RCW 42.17.130 would clearly prohibit the use of public resources to actively campaign in favor of its own proposition (AGO 1994 No. 20, at 10), the mere act of proposing a measure pursuant to express statutory authority to do so would constitute "normal and regular conduct" under RCW 42.17.130(3).
3. Application of RCW 42.17.130(3) to Governing Boards ofSpecial Purpose Districts.
Since the terms "normal" and "regular" are not statutorily defined, the Supreme Court has explained that they should be given their ordinary meanings. King Cy. Coun. v. Pub. Disclosure[original page 4] Comm'n, 93 Wn.2d 559, 561, 611 P.2d 1227
(1980). "`Normal' means usual or customary. . . . `Regular' means lawful or conducted in conformity with established rules." Id.
(citing, inter alia, AGO 1975 No. 23). See also WAC390-05-273 (administrative rule of the Public Disclosure Commission incorporating the court's definition and applying it to local government); and AGO 1994 No. 20, at 10 (suggesting a three-step analysis for determining whether the use of public facilities constitutes "normal and regular conduct").
The only decision of the Washington Supreme Court construing the "normal and regular conduct" exception occurred with regard to an action by the King County Council endorsing a ballot measure. The facts of the case occurred prior to the 1979 amendment that added language specifically permitting elected legislative bodies to take such actions. Laws of 1979, 1st Ex. Sess., ch. 265, § 2. As originally enacted by the voters through Initiative 276, the "normal and regular conduct" exception was the only exception to the general rule against using public facilities for political purposes. Laws of 1973, ch. 1, § 13. The court therefore resolved the case entirely under the pre-existing "normal and regular conduct" exception. King Cy. Coun.,93 Wn.2d at 560-61. Since your question also concerns the adoption of a motion or resolution supporting or opposing a ballot measure, and since RCW 42.17.130(1) does not apply (AGO2005 No. 4), our analysis of your question is guided by the court's resolution of the King County Council case.
In that case, the court found the county council's action of endorsing an initiative to be "normal" in that it was consistent with historical practice. King Cy. Coun., 93 Wn.2d at 562. As to whether the act of endorsing an initiative was "regular," the court noted that as a home rule county, the question of what actions the county council could lawfully take was governed by the county charter. Id. at 562-63. Two provisions of the county charter afforded the council general authority to set "policy." One provision described the council as "the policy determining body of the county". Id. at 563 (quoting King County Charter § 220.20). The other provision granted the council authority to "pass motions to make declarations of policy which do not have the force of law". Id. (quoting King County Charter § 240). The court found that this authority to make policy was "extremely broad" and encompassed the authority to take a position on a ballot measure. Id. The action was therefore "regular" in the sense of being lawful. Id.
The court cautioned: "This holding does not extend to endorsements by legislative bodies of non-charter local governmental entities." King Cy. Coun., 93 Wn.2d at 563 n. 4. The court's analysis placed considerable emphasis on King County's status as a charter county. Id. at 562-63. In contrast with other units of local government (whose powers are limited to those granted by state law), the only limitation on the powers of charter cities and charter counties "is that their action cannot contravene any constitutional provision or any legislative enactment." Id. at 562 (quoting Winkenwerder v. City ofYakima, 52 Wn.2d 617, 622, 328 P.2d 873 (1958)). The court thus clearly limited its holding to home rule cities and counties.
Even if the court were to conclude that the reasoning of KingCounty Council applied to general law units of government as well as to home rule cities and counties, special districts lack any comparable authority to the charter provision upon which the court relied. As noted, the King County Charter authorized the council to "make declarations of policy which do not have[original page 5] the force of law". King Cy. Coun.,93 Wn.2d at 563. State law authorizes the creation of numerous different types of special districts, each of which is governed by its own statutory provisions. Your letter posing this question mentioned five of them by way of example: school districts, port districts, public hospital districts, water-sewer districts, and public utility districts. Our review of the statutes governing those types of districts revealed no statutory authority for the governing boards of any of those districts to "make declarations of policy" of any similar scope to that granted by the King County Charter to the King County Council. See generally RCW28A.320 (school districts); RCW Title 53 (port districts); RCW70.44 (public hospital districts); RCW Title 54 (public utility districts); and RCW Title 57 (water-sewer districts). The closest statute we found was RCW 28A.320.015(1)(a), which grants local school boards "broad discretionary power" to determine certain educational policies for their respective districts. That grant of authority, however, relates to the actual operation of the school district, rather than to policy declarations on ballot measures.
The administrative rule adopted by the Public Disclosure Commission to define "normal and regular conduct" sheds further light on the analysis. After paraphrasing the King CountyCouncil court's definition of "normal and regular conduct," the rule goes on to provide: "No local office or agency may authorize a use of public facilities for the purpose of assisting a candidate's campaign or promoting or opposing a ballot proposition, in the absence of a constitutional, charter, or statutory provision separately authorizing such use." WAC390-05-273. This language makes clear that a local agency cannot pass a law or resolution which would authorize itself to engage in an otherwise prohibited activity. The authorization must come from some independent source of law.
As we observed early in this analysis, RCW 42.17.130 states a general prohibition against the use of public resources for political purposes. We construe this prohibition strictly and its exceptions narrowly. In order for the exception to that prohibition for "normal and regular conduct" to apply to a district's motion or resolution on a ballot measure, it would be necessary to find statutory authority authorizing such bodies to take this action. We find no such authority and, therefore, conclude that the "normal and regular conduct" exception does not apply to such motions or resolutions by governing bodies of special purpose districts.
We trust that the foregoing will be useful to you.
ROB MCKENNA Attorney General
JEFFREY T. EVEN Deputy Solicitor General
:pmd