

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE___ DEC 0 5 2019
~~Fairhurst~~ CQ
*CHIEF JUSTICE*



This opinion was
filed for record
at 8 a.m. on Dec. 5, 2019

Susan L. Carlson
**Susan L. Carlson**
**Supreme Court Clerk**

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| KING COUNTY,<br><br>        Appellant,<br><br>        v.<br><br>KING COUNTY WATER DISTRICTS Nos. 20, 45, 49, 90, 111, 119, 125, CEDAR RIVER WATER AND SEWER DISTRICT, COAL CREEK UTILITY DISTRICT, COVINGTON WATER DISTRICT, FALL CITY WATER DISTRICT, HIGHLINE WATER DISTRICT, LAKEHAVEN WATER AND SEWER DISTRICT, MIDWAY SEWER DISTRICT, NE SAMMAMISH SEWER AND WATER DISTRICT, SAMMAMISH PLATEAU WATER AND SEWER DISTRICT, SKYWAY WATER AND SEWER DISTRICT, SOUTHWEST SUBURBAN SEWER DISTRICT, VALLEY VIEW SEWER DISTRICT, VASHON SEWER DISTRICT, and WOODINVILLE WATER DISTRICT,<br><br>        Respondents, | NO. 96360-6<br><br>EN BANC<br><br>Filed    **DEC 0 5 2019** |

and

AMES LAKE WATER ASSOCIATION,
DOCKTON WATER ASSOCIATION,
FOOTHILLS WATER ASSOCIATION,
SALLAL WATER ASSOCIATION,
TANNER ELECTRIC COOPERATIVE,
and UNION HILL WATER
ASSOCIATION,

Intervenor-Respondents.

GORDON McCLOUD, J.—King County enacted a first-of-its-kind ordinance that requires electric, gas, water, and sewer utilities to pay for the right to use the county's rights-of-way, a right known as a franchise. King County refers to its planned charge as "franchise compensation," and the amount charged is based on an estimate of the franchise's value. If the county and utility cannot agree on an amount, the county will bar the utility from using its rights-of-way.

This case presents a facial challenge to King County's authority to charge franchise compensation. A secondary issue is whether water-sewer districts, defendants below, or private utilities, intervenors below, may use a county's rights-of-way without a franchise from the county. This case is decidedly *not* about whether any particular utility has an individual right, such as an express easement or a right grounded in an existing contract, to use a particular right-of-way without paying the county. Those issues are best resolved elsewhere, on a case-by-case

2

basis. Instead, this case is about whether King County may charge franchise compensation generally, and if so, whether water-sewer districts or private utilities, on the whole, may avoid that charge by using the county's rights-of-way without a franchise.

The superior court ruled that King County lacks the authority to charge franchise compensation. We reverse. We hold that generally, King County may charge franchise compensation. We also hold that water-sewer districts and private utilities have no general right to use King County's rights-of-way without a franchise.

FACTUAL AND PROCEDURAL BACKGROUND

King County operates and maintains many miles of county roads. Clerk's Papers (CP) at 1244; *see also* RCW 36.75.020 (requiring counties to operate and maintain county roads). These roads are located in rights-of-way, which the county has acquired over time and through various means. CP at 1244-45. The rights-of-way and the roads within them are primarily used for transportation. But they also "provide convenient, continuous corridors for the placement of utilities, including sewer, water, telecommunications, power[,] and gas." CP at 1247. Recognizing this, public and private utilities often enter into franchise agreements to use the county's rights-of-way. CP at 1247-48; *see also* RCW 36.55.010 (granting counties discretion to enter into these franchise agreements).

3

Historically, King County charged a utility seeking to use a county right-of-way only an administrative fee. CP at 1248. This changed in November 2016, when the King County Council passed Ordinance 18403. CP at 1253-70. Under that ordinance and its accompanying public rule, King County now requires electric, gas, water, and sewer utilities to pay "franchise compensation," which the ordinance equates to an annual rent payment, in exchange for the right to use the county's rights-of-way. CP at 1254-55, 1260, 1264-65, 1272. This compensation requirement applies not only prospectively to future franchises but also retroactively to "existing franchises that include terms that authorize compensation in return for the right to use the right-of-way." CP at 1264.[1] The county estimated that the ordinance would generate approximately $10 million per year. CP at 288. Before the superior court, King County acknowledged that "no other county currently obtains franchise compensation." Report of Proceedings (July 27, 2018) (RP) at 10.

The amount of franchise compensation due is subject to negotiation. CP at 1265, 1273. The county first determines an estimate by considering the following relevant factors:

> the land value of right-of-way within the applicant's service area; the approximate amount of area within the right-of-way that will be needed

---

[1] The intervenors argue that it is impermissible to add the charge midcontract. But arguments premised on existing contracts, along with arguments that may arise during individual negotiations, are best brought as individual challenges. Today, we resolve only the facial challenge to King County's authority to charge franchise compensation.

4

to accommodate the applicant's use; a reasonable rate of return to King County for the applicant's use of the right-of-way; the business opportunity made available to the applicant; density of households served; a reasonable annual adjustment; and other factors that are reasonably related to the value of the franchise or the cost to King County of negotiating the franchise.

CP at 1265. Pursuant to Ordinance 18403, the Facilities Management Division of King County adopted Rule RPM 9-2, which establishes the methodology used to estimate franchise compensation. CP at 1265, 1272-76; *see also* CP at 1231-36 (explaining methodology). The county then provides that estimate to the utility, at which time the utility may counteroffer. CP at 1265, 1273. If the county and the utility cannot agree, then the county will not allow the utility to use the right-of-way. CP at 1260, 1273, 1276.

After a number of water-sewer districts, which are special purpose local governments distinct from the county, made it known that they would sue, King County sought "a declaratory judgment validating its authority to enact Ordinance 18403 and its accompanying public rule." CP at 2-3. Six consumer-owned private utilities subsequently intervened. CP at 79-83.

The parties filed cross motions for summary judgment. CP at 88-117, 1029-40, 1192-1216. The water-sewer districts and the private utilities argued that they have a right to use the county's rights-of-way without paying franchise compensation, that the county lacks the authority to charge franchise compensation,

5

and that the charge is really an unlawful tax. CP at 88-117, 1029-40. King County argued that it has broad statutory authority to charge the utilities franchise compensation and that this authority is well supported by a long line of case law. CP at 1192-216; RP at 8. King County also argued that its status as a home rule county means that it has "powers as broad as the state, except where expressly limited"—and that its powers are not expressly limited here. RP at 9.

King County Superior Court granted the water-sewer districts' and the private utilities' motions and denied King County's. CP at 2282-83. It reasoned that the county lacked authority to charge any utility, public or private, a fee in the nature of "rent" in exchange for a franchise. Specifically, the superior court stated, in its written order, that King County may "charge utilities for the reasonable administrative costs" of regulating its roads and rights-of-way, but that it "lacks authority to impose 'franchise compensation' or 'rent'" and "lacks the authority to require the utility defendants to pay, or to agree to pay, 'franchise compensation' or 'rent.'" CP at 2283. The court explained that "[f]ranchises are contracts which must be negotiated and agreed upon by the parties thereto, and King County may not require the utility defendants to enter into a franchise agreement by accepting King County's franchise terms." *Id.*; *see also* CP at 2298 (oral ruling, incorporated by reference) ("The county . . . cannot compel its terms unilaterally on the utilities."). The court also stated that "[w]ater-sewer districts have statutory authority under

6

RCW 57.08.005(3) and (5) to locate, operate and maintain their water and sewer facilities in 'public highways, roads, and streets.'" CP at 2283. The court was silent as to whether the intervening private utilities had similar statutory authority. *See id.* Striking down franchise compensation on these grounds, the superior court had no reason to and did not address whether the charge is a tax. In the end, the superior court struck the sections of the ordinance dealing with franchise compensation, along with the rule promulgated pursuant to the ordinance. CP at 2283-84.

We granted direct review. Order, *King County v. King County Water Districts et al.*, No. 96360-6 (Wash. Apr. 3, 2019). A number of amici filed briefs: Washington State Association of Counties, Washington Public Utility Districts Association, Washington Water Utilities Council, Washington Rural Electric Cooperative Association, Shawnee Water Association, Rental Housing Association of Washington, and Puget Sound Energy.[2]

---

[2] Amici raise a number of issues that were not briefed by either party. We decline to reach the ones that are outside the scope of the issue before us. *E.g.*, Amicus Curiae Br. of Puget Sound Energy at 14-17 (arguing that the ordinance violates the equal protection clause as applied to it, even though Puget Sound Energy is not a party to this litigation); Wash. Pub. Util. Dists. Ass'n's Amicus Curiae Br. at 14-16 (arguing that King County failed to comply with the Uniform Declaratory Judgments Act, chapter 7.24 RCW, when it sought declaratory relief); Wash. Water Utils. Council's Amicus Curiae Br. at 5-17 (challenging a section of the ordinance, dealing with forbearance, not at issue here).

ANALYSIS

King County's plan to charge the utilities "franchise compensation" for the right to use its rights-of-way is innovative. The county admitted before the superior court that "no other county currently obtains franchise compensation." RP at 10. But four well-established legal principles provide a useful framework for analysis.

First, a county may grant a franchise to a utility—but it does not have to. RCW 36.55.010; *City of Spokane v. Spokane Gas & Fuel Co.*, 175 Wash. 103, 107, 26 P.2d 1034 (1933) (explaining that a "municipality may refuse to grant a franchise at all" (citing *State ex rel. Spokane & B.C. Tel. & Tel. Co. v. City of Spokane*, 24 Wash. 53, 63 P. 1116 (1901))). A county's discretion is broad: if it decides to grant a franchise, "it may do so on its own terms, conditions and limitations." *Spokane Gas & Fuel Co.*, 175 Wash. at 107. For instance, a county "may require compensation for the use of the public streets as a condition for granting a franchise, unless forbidden by statute or contrary to public policy." *Burns v. City of Seattle*, 161 Wn.2d 129, 144, 164 P.3d 475 (2007) (citing 12 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 34.52, at 199-200 (3d ed. 2006)).

Second, although King County has broad discretion to grant a franchise, it may not compel a utility to accept its terms, conditions, and limitations. *Burns*, 161 Wn.2d at 142; *Gen. Tel. Co. of Nw., Inc. v. City of Bothell*, 105 Wn.2d 579, 584, 586, 716 P.2d 879 (1986); *City of Lakewood v. Pierce County*, 106 Wn. App. 63, 74,

8

23 P.3d 1 (2001). A franchise is a contract, and like all contracts, both sides must agree to the terms. *Id.* The superior court correctly recognized this legal principle. CP at 2298 ("The county . . . cannot compel its terms unilaterally on the utilities."). This does not mean that a county or a utility may not consider certain terms, such as franchise compensation, nonnegotiable. It simply means that both sides must agree to the terms before an agreement is reached.

Third, King County, which is a home rule county, "'has as broad legislative powers as the state,'" at least when it comes to local affairs. *King County Council v. Pub. Disclosure Comm'n*, 93 Wn.2d 559, 562-63, 611 P.2d 1227 (1980) (quoting *Winkenwerder v. City of Yakima*, 52 Wn.2d 617, 622, 328 P.2d 873 (1958)). This broad power means that generally, King County may legislate as it sees fit, so long as it does so within the confines of state and constitutional law. *Id.* However, King County may not tax without express authorization from the legislature. *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 855, 827 P.2d 1000 (1992) (citing *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982)).

Fourth, water-sewer districts, which are special purpose local governments, have only those powers that are expressly granted to them, those that are "'necessarily or fairly implied in or incident to the powers expressly granted,'" and those that are "'essential'" to its "'objects and purposes.'" *Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 788, 357 P.3d 1040 (2015) (quoting *Port of Seattle v.*

*Wash. Utils. & Transp. Comm'n*, 92 Wn.2d 789, 794-95, 597 P.2d 383 (1979)). The intervening private utilities have no governmental powers—and no right to use county rights-of-way without consent. *See Baxter-Wyckoff Co. v. City of Seattle*, 67 Wn.2d 555, 560, 408 P.2d 1012 (1965). Thus, the water-sewer districts and private utilities before us can act only if state law has granted them the authority to do so.

According to these well-established legal principles, King County may charge franchise compensation if it is not an unauthorized tax and if doing so will not conflict with state law. Even if King County may charge franchise compensation, however, it may not compel a utility to accept franchise compensation as a franchise term. But if a utility does not accept, it may not use the county's rights-of-way without some other source of authority to do so. Thus, the questions before us are (1) whether the charge is actually an unauthorized tax, (2) whether the charge conflicts with state law, and (3) whether the utilities may use the rights-of-way without a franchise. These are all issues of law, which we review de novo. *Howe v. Douglas County*, 146 Wn.2d 183, 188, 43 P.3d 1240 (2002) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 578, 870 P.2d 299 (1994), *overruled in part on other grounds by Chong Yim v. City of Seattle*, No. 96817-9 (Wash. Nov. 14, 2019)).

I.   The charge is not a tax

The utilities argue that franchise compensation is an unauthorized and therefore unlawful tax. But courts have consistently rejected similar arguments,

instead characterizing charges like the franchise compensation at issue here as charges in the nature of rent. *E.g.*, *City of St. Louis v. W. Union Tel. Co.*, 148 U.S. 92, 97, 13 S. Ct. 485, 37 L. Ed. 380 (1893); *cf. Jacks v. City of Santa Barbara*, 3 Cal. 5th 248, 262, 267, 397 P.3d 210, 219 Cal. Rptr. 3d 859 (2017) (explaining that franchise fees are not taxes but are the cost of purchasing a property right). In *Western Union Telegraph*, for example, the city of St. Louis tried to charge telegraph and telephone companies $5 per year for each pole located on city property, including streets. 148 U.S. at 93-94. The trial court held that the charge was an unauthorized tax. *Id.* at 95-96. The United States Supreme Court reversed, holding that the charge was "in the nature of a charge for the use of property belonging to the city—that which may properly be called rental." *Id.* at 97. The Supreme Court explained that the charge was no different than if the city had rented out the rooms of city hall. *Id*

We have fully endorsed that view. *E.g.*, *Burns*, 161 Wn.2d at 144 ("A franchise fee is 'in the nature of rental for the use and occupation of the streets.'" (quoting *Spokane Gas & Fuel*, 175 Wash. at 108)); *Pac. Tel. & Tel. Co. v. City of Everett*, 97 Wash. 259, 267-68, 166 P. 650 (1917) (quoting favorably from *W. Union Tel.*, 148 U.S. 92). In *Spokane Gas & Fuel*, for example, the city of Spokane granted a franchise to a gas company for the use of city streets to distribute gas. 175 Wash. at 104. In exchange for the right to use city streets, the city of Spokane charged the

company two percent of its gross receipts from the sale of gas. *Id.* at 104-05. We explained that "[a] charge imposed in a franchise is not a tax or a license." *Id.* at 108-09. Instead, the charge at issue was "in the nature of a rental . . . pursuant to the terms of a contract." *Id.* at 109.

In any event, whether franchise compensation is akin to rent does not matter. All that matters is that whatever it is, it is not a tax. To argue that it *is* a tax, the utilities rely on two cases, one from our court and one from the Court of Appeals. Dists.' Resp. Br. at 17-20 (discussing *Covell v. City of Seattle*, 127 Wn.2d 874, 905 P.2d 324 (1995), *overruled in part on other grounds by Chong Yim*, No. 96817-9; *Lakewood*, 106 Wn. App. 63); Br. of Intervenor-Resp'ts at 30-31, 47-48 (same). But as *City of Snoqualmie v. Constantine* makes clear, those cases are not on point here. 187 Wn.2d 289, 386 P.3d 279 (2016).

In *Covell*, we designed a three-factor test[3] to help courts distinguish taxes from regulatory fees, a distinction that can be decisive. 127 Wn.2d at 879. For example, in *Watson v. City of Seattle*, the city could tax but not regulate the sale of guns, so whether the ordinance at issue was a tax or a regulation was dispositive. 189 Wn.2d 149, 155-56, 401 P.3d 1 (2017). But in *Snoqualmie*, we held that the *Covell* factors

---

[3] (1) Whether the primary purpose of a charge is to raise revenue or to regulate, (2) whether the collected money is to be allocated for a specific regulatory purpose or simply mixed into a general fund, and (3) whether a direct relationship exists between the charge and the service received or burden produced by the fee payer. *Covell*, 127 Wn.2d at 879.

are "too limited" and "not entirely helpful" when the issue is simply whether a charge is a tax or not, as opposed to whether the charge is either a tax or a regulatory fee. 187 Wn.2d at 299-300. After all, "some payments to the government are neither taxes nor regulatory fees." *Id.* at 299; *see also Spokane Gas & Fuel*, 175 Wash. at 108-09 (explaining that the charge was not imposed under the county's powers of taxation or police regulation). Since a charge can be something else entirely, a party cannot prove that a charge is a tax merely by proving that it is not a regulatory fee.

Like in *Snoqualmie*, the issue here is simply whether the charge is a tax or not. *Ski Acres*, 118 Wn.2d at 855 (explaining that a county cannot tax without explicit authority). Thus, although *Covell* remains good law, it is "not entirely helpful" here. *Snoqualmie*, 187 Wn.2d at 299-300. When the issue is simply whether a charge is a tax, we consider "'the purpose of the cost, where the money raised is spent, and whether people pay the cost because they use the service.'" *Id.* at 301 (quoting *Lane v. City of Seattle*, 164 Wn.2d 875, 882, 194 P.3d 977 (2008)). These three considerations compel the conclusion that franchise compensation is not a tax.

First, we consider the purpose of the charge. King County seeks to charge the utilities franchise compensation in exchange for access to its rights-of-way. Although the county seeks to generate revenue, a purpose we have previously associated with a tax, *id.* (citing *Covell*, 127 Wn.2d at 879), it does not seek to do so separately from any service or property right provided to the utilities. Instead, the

13

county bases the charge on the value of the franchise to be granted to the utilities. CP at 1230-36, 1265. Further, as we have previously acknowledged, "all governmental charges are generally imposed to raise revenue," and this "is not dispositive." *Snoqualmie*, 187 Wn.2d at 301.

Second, we consider where the money is spent. A charge is more likely to be a tax if the government deposits the money into a general fund rather than into "a special fund for a particular purpose." *Id.* But depositing money into a general fund does not mean that a charge is a tax per se. *Id.* For instance, a charge is less likely to be a tax—no matter where it is deposited—if the charge is for municipal services rendered. *Id.* at 301-02. In *Snoqualmie*, for example, the city charged the Muckleshoot Indian Tribe a payment in lieu of tax. *Id.* at 294. Although Snoqualmie deposited the money into a general fund, we explained that the charge was "unlike a tax" because it was "used to offset or reimburse the cost of municipal services provided to the tribal land." *Id.* at 302. Here, King County plans to deposit the money raised from the charge into a general fund. CP at 288. But the charge is for a valuable property right: King County will allow the utilities to use its rights-of-way in exchange for franchise compensation. *See Burns*, 161 Wn.2d at 144 ("a franchise is a valuable property right"). This is not unlike the valuable services received by the Muckleshoot Indian Tribe in exchange for the payment in lieu of tax, and it is evidence that the charge is not a tax.

14

Third, we consider whether people pay the cost because they use the service. If they do, then the charge is less likely to be a tax. *Snoqualmie*, 187 Wn.2d at 302. In *Snoqualmie*, for example, the tribe and the city negotiated a price intended to cover the cost of future services rendered, and we held that the charge was not a tax. *Id.* Likewise, under the ordinance at issue here, King County and the utilities will negotiate a price based on a number of factors intended to capture the value of the franchise granted to the utilities. CP at 1265. If the two sides reach an agreement, then the utilities will pay the franchise compensation in exchange for access to the county's rights-of-way. This factor suggests that the charge is not a tax.

We note that the *Snoqualmie* factors might come out differently if the county were to charge a utility an amount beyond a reasonable estimate of the value of a franchise. *See Jacks*, 3 Cal. 5th at 271 ("[T]he determination of whether a charge that is nominally a franchise fee constitutes a tax depends on whether it is reasonably related to the value of the franchise rights."). A utility can certainly challenge a specific charge as unreasonable when a charge is imposed. Such a hypothetical as-applied challenge, however, is both unripe and beyond the scope of the issue before us.

In sum, *Snoqualmie* guides our analysis here. Under that precedent, a charge that raises revenue for a municipality's general fund is not necessarily a tax, and this is particularly true when the charge is part of a bargained-for exchange. *Snoqualmie*,

15

187 Wn.2d at 301-02. The franchise compensation at issue is not a tax here for the same reason that a payment in lieu of tax was not a tax there.

The Court of Appeals case cited by the utilities, *Lakewood*, 106 Wn. App. 63, does not change that result. *Lakewood* was decided before *Snoqualmie* and, hence, did not have the benefit of its reasoning. Nor did *Lakewood* make any holding on the franchise compensation issue. In that case, Pierce County argued that the city of Lakewood could not impose a franchise fee on its county-run sewer system because such a fee was really an impermissible tax. *Id.* at 75. But unlike King County here, Lakewood claimed that the fee covered only costs associated with the county's operation of the sewer system and provided no additional revenue. *Id.* Relying on *Covell*, the *Lakewood* court held that the fee was not a tax. *Id.* The court also recognized that franchise fees are "in the nature of rental for the use and occupation of the streets." *Id.* at 77 (citing *Spokane Gas & Fuel*, 175 Wash. at 108). But it went on to state, in dicta, that the fee would have been a tax under *Covell* had Lakewood attempted to raise revenue beyond that necessary to recover its costs. *Id.* at 76-79.

Here, King County attempts to do what Lakewood did not: raise revenue beyond that necessary to recover its costs. We are not bound by *Lakewood*'s dicta, especially since it stemmed from *Covell*, a case that is "not entirely helpful" in determining simply whether a charge is a tax or not. *Snoqualmie*, 187 Wn.2d at 299-

16

300. Instead, we rely on settled precedent and the *Snoqualmie* factors to hold that franchise compensation is not a tax.[4]

II.    State law does not bar King County from charging franchise compensation

The utilities make much of the fact that nothing in the statutes expressly authorizes King County to charge franchise compensation. *E.g.*, Dists.' Resp. Br. at 43. The superior court found this persuasive, noting that "the statutes are silent as to any rents based on usage." CP at 2296.

But a county "may require compensation for the use of the public streets as a condition for granting a franchise, *unless forbidden by statute or contrary to public policy*." *Burns*, 161 Wn.2d at 144 (emphasis added) (citing 12 MCQUILLIN, *supra*, § 34.52, at 199-200).

Relatedly, King County, which is a home rule county, has broad legislative authority. *King County Council*, 93 Wn.2d at 562-63. When it comes to local affairs, King County may legislate as it sees fit—within the confines of state and constitutional law, of course. *Id.* As discussed below, franchising local rights-of-way is a local affair that falls within King County's home rule authority.

---

[4] The water-sewer districts argue that they are immune from the alleged tax under the governmental immunity doctrine. Dists.' Resp. Br. at 15-16. And the private utilities argue that the tax violates the state constitution because it is "hidden." Br. of Intervenor-Resp'ts at 49-50. These arguments fail because the charge is not a tax.

17

Thus, the question is not whether anything in the statutes expressly *authorizes* King County to charge franchise compensation; the question is whether anything in the statutes expressly *bars* King County from doing so. And the answer to that question is no.

> A. No constitutional provision or state statute bars King County from charging franchise compensation

To reiterate, a county "may require compensation for the use of the public streets as a condition for granting a franchise, unless forbidden by statute or contrary to public policy." *Burns*, 161 Wn.2d at 144 (citing 12 MCQUILLIN, *supra*, § 34.52, at 199-200).

The utilities fail to identify any law that explicitly limits King County's authority to charge franchise compensation. An example of a statute that clearly limits a municipality's power to charge franchise compensation is RCW 35.21.860. That statute bars cities and towns—but not counties—from imposing "a franchise fee or any other fee or charge of whatever nature or description upon the light and power, or gas distribution businesses, . . . or telephone business, . . . or service provider for use of the right-of-way." RCW 35.21.860(1). A handful of exceptions to this general bar exist; for example, a city or town may charge a fee "that recovers actual administrative expenses incurred by a city or town." RCW 35.21.860(1)(b). Another example of a statute that limits the government's ability to charge franchise

compensation is RCW 47.44.020. That statute allows the Department of Transportation to grant franchises "with or without compensation, but not in excess of the reasonable cost for investigating, handling, and granting the franchise." RCW 47.44.020(1). So, under these statutes, cities, towns, and the Department of Transportation are expressly limited in how much they can charge. These statutes show that when the legislature wants to bar a subdivision of the state from charging franchise compensation, it knows how to do so. The legislature did so for cities and towns, and it did so in part for the Department of Transportation, but it did not do so for counties.[5] Our settled rules of statutory interpretation compel us to conclude that this difference in treatment was intentional. *See United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984) (discussing the "elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent" (citing *Seeber v. Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981))).

Lacking the explicit statutory language they need, the utilities focus much of their argument on King County's ownership interest in the rights-of-way, citing a plethora of not-quite-on-point statutes and case law. For example, the districts point

---

[5] No statute bars counties from charging franchise compensation. Although one statute provides that a franchisee is "liable to the county for all necessary expense incurred in restoring the county road to a suitable condition for travel," RCW 36.55.060(1), no statute limits the county's ability to seek other charges in addition to this.

19

to one statute, from a different chapter of the RCW, that requires counties to establish, lay out, construct, alter, repair, improve, and maintain county roads "'as agents of the state.'" Dists.' Resp. Br. at 35-36 (emphasis omitted) (quoting RCW 36.75.020). The districts argue that since King County is acting as a state agent, it does not own the roads, and since it does not own the roads, it cannot charge franchise compensation. *Id.*

It may be true that the counties do not own the county roads but instead operate and maintain them as agents of the state. But it is also true that the counties have independent statutory authority to "grant franchises" to utilities "to use the right-of-way of county roads in their respective counties for the construction and maintenance of waterworks, gas pipes, telegraph, and electric light lines, sewers and any other such facilities." RCW 36.55.010. Regardless of ownership, this statute provides counties with at least some power to exclude: counties have discretion to deny a utility a franchise.

The districts also cite to case law suggesting that counties hold their rights-of-way in trust for the public. Dists.' Resp. Br. at 36-37 (citing *State ex rel. York v. Bd. of County Comm'rs*, 28 Wn.2d 891, 898, 184 P.2d 577 (1947)). They argue that charging franchise compensation is a "clear breach" of King County's "duties as trustee." *Id.* at 37.

20

We agree that counties hold their rights-of-way in trust for the public. We made that clear in *York*, when we explained that counties hold rights-of-way in trust for the public, primarily for public travel but secondarily for other purposes such as provision of utilities. 28 Wn.2d at 897-98; *see also Kiely v. Graves*, 173 Wn.2d 926, 937, 271 P.3d 226 (2012). The concept that counties hold rights-of-way in trust for the public finds further support in statute. Under RCW 36.55.050, the county may grant a franchise if it "deems it to be for the public interest." The statute does not define "public interest," suggesting that a county has broad discretion to determine whether a franchise satisfies that standard. *See* RCW 36.55.050. In *York*, we explained that the county's determination may not be "'arbitrary[,] capricious, or . . . prompted by wrong motives,'" such as a misunderstanding of the law. 28 Wn.2d at 911-12 (quoting *State ex rel. Yeargin v. Maschke*, 90 Wash. 249, 253, 155 P. 1064 (1916)). But at the same time, we will not opine on the county's wisdom or lack thereof, so long as the county lawfully exercised its discretion. *Id.* at 911.

Here, King County reasoned that a franchise is "a valuable property right" that "allows the utility companies to profit and benefit from the use of the right-of-way in a manner not generally available to the public." CP at 1254. Thus, King County determined that "it is in the best interests of the public to require a utility to provide reasonable compensation in return for its use of the right-of-way of county roads." CP at 1254-55. This determination is acceptable under the relevant statutes, which

21

give counties broad discretion to grant franchises if doing so is in the public interest. *E.g.*, RCW 36.55.010, .050. Although the utilities claim that franchise compensation will raise the price of utilities, we will not question a county's wisdom where, as here, the county lawfully exercises its discretion.

In sum, the utilities do not identify any law that clearly limits King County's authority to charge franchise compensation. Nevertheless, the superior court ruled that counties are barred from charging anything in excess of "reasonable administrative costs." CP at 2283. Because such a limitation finds no support in any law, we reverse the superior court.

B. King County has broad control over local affairs

That conclusion applies with even greater force in this case, given King County's status as a home rule county. "Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state . . . ." WASH. CONST. art. XI, § 4. Through this constitutional provision, Washingtonians "manifested an intent that they should have the right to conduct their purely local affairs without supervision by the state, so long as they abided by the provisions of the constitution and did not run counter to considerations of public policy of broad concern, expressed in general laws." *State ex rel. Carroll v. King County*, 78 Wn.2d 452, 457-58, 474 P.2d 877 (1970). King County has adopted a home rule charter, allowing it to "exercise powers that do not violate a constitutional provision,

legislative enactment, or [its] own charter." *Chem. Bank v. Wash. Pub. Power Supply Sys.*, 99 Wn.2d 772, 792, 666 P.2d 329 (1983) (citing *Winkenwerder*, 52 Wn.2d at 622-23); *see also King County Council*, 93 Wn.2d at 562-63. In its charter, King County reserved for itself as much power as the constitution permits. KING COUNTY CHARTER § 110 ("The county shall have all of the powers which it is possible for a home rule county to have under the state constitution."). Thus, King County may exercise powers that do not violate a constitutional provision or legislative enactment.

Nevertheless, King County needs authorization, express or implied, to act if the state's interest is "'paramount to or joint with'" its own. *Chem. Bank*, 99 Wn.2d at 793 (quoting *Massie v. Brown*, 84 Wn.2d 490, 492, 527 P.2d 476 (1974)). In *Chemical Bank*, for example, the Washington Public Power Supply System, a municipal corporation composed of 19 public utility districts and four cities, attempted to finance the construction of two nuclear-generating plants by issuing bonds. *Id.* at 776-77. Several Washington municipalities, along with entities from five other states, entered into contracts that would have required them to guarantee bond payments regardless of whether the two plants were ever completed. *Id.* at 777-78, 798. One of the issues before us was whether the Washington home rule municipalities had authority to enter into these contracts without authorization from the legislature. *Id.* at 792-94. We said no, explaining that the development of

23

nuclear-generating facilities "through the joint efforts of municipalities and other public bodies is a subject of at least state and local interest." *Id.* at 793-94.

In *City of Issaquah v. Teleprompter Corp.*, on the other hand, we held that a city could "acquire, own[,] and operate a cable television system within its municipal borders" without express or implied authorization. 93 Wn.2d 567, 568, 573, 611 P.2d 741 (1980). Teleprompter Corporation argued that a statute required television reception disputes to be addressed with statewide solutions. *Id.* at 572. "Since television reception is not merely a matter of local concern," Teleprompter argued, "the city may not legislate in the area without express legislative delegation." *Id.* We rejected this argument, reasoning that the state's concern was not "of such a magnitude" to bar "local action on the matter." *Id.* at 572-73 (citing RCW 35A.01.010).

Here, King County hopes to charge utilities franchise compensation to use the rights-of-way located within its borders. This action is more like the one upheld in *Teleprompter Corp.* than the one struck down in *Chemical Bank*.

The utilities cite RCW 36.75.020 as evidence that county roads are of statewide, not merely local, interest. *E.g.*, Dists.' Resp. Br. at 52-53. Under that statute, counties operate and maintain county roads "as agents of the state." RCW 36.75.020. Although this language appears in a chapter of the RCW separate from the chapter on franchising, we have stated that a county "acts as an administrative

agency of the state government" when it grants a franchise. *York*, 28 Wn.2d at 911 (citing *B.C. Tel. & Tel.*, 24 Wash. 53; 4 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 1739, at 861 (2d ed. 1943); 23 AM. JUR., *Franchises* § 11 (1939)).

But we have clearly explained that the State has traditionally delegated its absolute control over county roads to the counties. *Id.* at 898. Critically, the State has delegated the key aspect of its control at issue here—the ability to grant franchises—to counties. Chapter 36.55 RCW (providing framework for counties to grant franchises without reserving any control for the State). It follows that any interest retained by the State is not "of such a magnitude" to bar King County from taking local action, so long as that action does not conflict with any state law. *Teleprompter Corp.*, 93 Wn.2d at 573, 575 (reasoning that the city's action did not conflict with any state statute); *see also Chem. Bank*, 99 Wn.2d at 792 (explaining that a home rule municipality's power is limited only by constitutional provision or legislative enactment). A county's concern over the roads within its jurisdiction outweighs any interest in those roads retained by the State.

III.    No state law or other source of authority permits the utilities to use the county's rights-of-way without a franchise

Even if King County may charge franchise compensation, it may not compel a utility to accepts its terms and conditions. *Burns*, 161 Wn.2d at 142; *Gen. Tel. Co.*,

105 Wn.2d at 584; *Lakewood*, 106 Wn. App. at 74. But if a utility does not accept the county's terms and conditions, it must point to some other source of authority to use the rights-of-way absent a franchise.

Here, the water-sewer districts argue that they have a "statutory franchise" under RCW 57.08.005 to use the county's rights-of-way without the county's consent and without payment to the county. Dists.' Resp. Br. at 21-23. The intervening private utilities acknowledge that this statute does not apply to them, Br. of Intervenor-Resp'ts at 8, and they fail to identify any other source of law that grants them the right to use the county's rights-of-way without a franchise, *see Baxter-Wyckoff*, 67 Wn.2d at 560 (private utilities have no right to use rights-of-way absent consent). Whether RCW 57.08.005 grants the water-sewer districts a statutory franchise is a question of statutory interpretation.

When interpreting a statute, we strive "to ascertain and carry out the [l]egislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the legislature's intent is clear from the statute's language, we end our inquiry there. *Id.* at 9-10. When ascertaining intent from a statute's language, we examine "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Id.* at 10. "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort

to aids to construction, including legislative history." *Id.* at 12. Ultimately, we must "harmonize[]" "[r]elated statutory provisions . . . to effectuate a consistent statutory scheme that maintains the integrity of the respective statute." *Koenig v. City of Des Moines*, 158 Wn.2d 173, 184, 142 P.3d 162 (2006) (citing *State v. Chapman*, 140 Wn.2d 436, 448, 998 P.2d 282 (2000)).

Under RCW 57.08.005, water-sewer districts have the power to "acquire by purchase or condemnation, or both, all lands, property and property rights . . . necessary for its purposes." RCW 57.08.005(1). A district that provides water service has the power to "conduct [water] throughout the district . . . and carry it along and upon public highways, roads, and streets." RCW 57.08.005(3). Similarly, a district that provides sewer service has the statutory power to "construct and lay sewer pipe along and upon public highways, roads, and streets . . . and condemn and purchase or acquire land and rights-of-way necessary for such sewer pipe." RCW 57.08.005(5).

The water-sewer districts emphasize the parts of the statute that allow them to carry water and construct and lay sewer pipe along and upon public highways, roads, and streets. The districts argue that the language about acquiring the necessary property rights and rights-of-way "relates to areas that are not within public rights-of-way." Dists.' Resp. Br. at 45. They claim that the statute grants them the right to use areas that *are* within public rights-of-way without a franchise from the county.

*Id.* at 45-46. This statutory franchise, according to the districts, operates as an exception to RCW 36.55.010, the statute that grants the counties discretion to grant franchises to utilities. *Id.* at 46.

In response, King County emphasizes the parts of the statute that allow the districts to acquire the property rights and rights-of-way that they need. Appellant King County's Reply Br. at 24-25. Based on this language, King County argues that the statute enables water-sewer districts to enter into franchise agreements but does not enable the districts to use the county's rights-of-way without an agreement. *Id.* at 23-28.

The statute's language—and silence—resolves this dispute. The statute does not explicitly state that water-sewer districts must acquire a franchise before using the county's rights-of-way. Neither does it explicitly state that water-sewer districts may use a county's rights-of-way without a franchise. But water-sewer districts are special purpose local governments. Thus, they have only those powers that are expressly granted to them, those that are "'necessarily or fairly implied in or incident to the powers expressly granted'" and those that are "'essential'" to its "'objects and purposes.'" *Filo Foods*, 183 Wn.2d at 788 (quoting *Wash. Utils. & Transp. Comm'n*, 92 Wn.2d at 794-95). RCW 57.08.005 flunks this test. It does not expressly grant the districts the right to use the rights-of-way without a franchise. This right is not necessarily or fairly implied in or incident to the powers expressly

granted, either. In fact, the statute enables water-sewer districts to acquire property rights by purchase or condemnation, and it enables sewer districts to acquire rights-of-way. RCW 57.08.005(1), (5). These grants of power imply that the water-sewer districts must acquire, and have the power to acquire, the necessary property rights to use a county's rights-of-way. Finally, a statutory franchise is not essential to a water-sewer district's objects and purposes. A district can still carry out its objects and purposes even if it has to enter into a franchise agreement with a county first.

The statute's silence is telling for another reason: other statutes are explicit. For example, metropolitan municipal corporations have the power "to construct or maintain metropolitan facilities in, along, on, under, over, or through . . . public rights-of-way *without first obtaining a franchise from the county or city having jurisdiction over the same.*" RCW 35.58.330 (emphasis added). As discussed above, it is an "elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." *United Parcel Serv.*, 102 Wn.2d at 362 (citing *Seeber*, 96 Wn.2d at 139). Unlike RCW 35.58.330, the statute at issue here does *not* expressly grant a water-sewer district the power to carry water or lay sewer pipe along county roads without first obtaining a franchise from the county. *See* RCW 57.08.005(1), (3), (5). We presume that this difference means something.

This interpretation of the statute also harmonizes RCW 57.08.005 with RCW 36.55.010. *Koenig*, 158 Wn.2d at 184 ("Related statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective statute." (citing *Chapman*, 140 Wn.2d at 448)). Under RCW 57.08.005, a water-sewer district may use a county's rights-of-way with that county's permission, and under RCW 36.55.010, the county may decide whether to allow the district to use its rights-of-way. In contrast, if we were to accept the water-sewer districts argument that RCW 57.08.005 grants them a statutory franchise, then the two statutes would conflict. The districts would be able to use a county's rights-of-way without the county's permission, effectively taking away the county's discretion whether to enter into a franchise agreement at all.

In *Western Union Telegraph*, the United States Supreme Court reached a similar conclusion. There, a federal statute permitted telegraph companies to "'construct, maintain and operate lines of telegraph . . . over and along any of the military or post roads of the United States.'" *W. Union Tel.*, 148 U.S. at 100 (quoting the act of Congress of July 24, 1866, ch. 230, 14 Stat. 221). The telegraph company argued that this federal statute allowed it to use the streets of St. Louis for free. *Id.* The United States Supreme Court disagreed, explaining that the federal statute was "simply a permissive statute" that "carrie[d] with it no exemption from the ordinary burdens which may be cast upon those who would appropriate to their exclusive use

30

any portion of the public highways." *Id.* at 102. Similarly, the statute at issue here is a "permissive statute" that allows the districts to use county rights-of-way but does not exempt them from the "ordinary burden[]" of obtaining a franchise agreement.

The utilities' final argument is that when somebody dedicates a road "to the public" or "for all public purposes," that person impliedly grants the utilities an easement to use the road for free. Dists.' Resp. Br. at 54-56; Br. of Intervenor-Resp'ts at 34-37. But we have explained that utilities are not the same as the general public—they operate for the benefit of their customers. *Okeson v. City of Seattle*, 150 Wn.2d 540, 550, 78 P.3d 1279 (2003). "A utility will not provide [service] to a customer that does not request service." *Id.* Thus, by dedicating a road to the public, a person does not impliedly grant a utility company—which operates for the benefit of its customers, not the general public—unfettered access to that road.[6]

---

[6] Some utilities claim that they have acquired an express right to use a county right-of-way via franchise agreement, dedication, or some other means. *See* Br. of Intervenor-Resp'ts at 34, 44-47; Br. of Amicus Curiae Shawnee Water Ass'n at 1-3; Amicus Br. of the Wash. Rural Elec. Coop. Ass'n at 10-12. Shawnee Water Association, for example, claims that it has an actual easement. Br. of Amicus Curiae Shawnee Water Ass'n at 1-2. Here, we hold that water-sewer districts and private utilities have no general right to use county rights-of-way without a franchise. Whether an individual utility has some specific right to use the rights-of-way without a franchise must be resolved on a case-by-case basis.

In sum, the utilities fail to identify any source of authority to use a county's rights-of-way without a franchise from the county. To use county rights-of-way, the water-sewer districts and private utilities must obtain a franchise from the county.[7]

CONCLUSION

We hold that, in general, King County may charge franchise compensation. Franchise compensation is not a tax. It is one term of a bargained-for exchange. And no law bars King County from seeking to include this term in a franchise agreement.

We further hold that neither the water-sewer districts nor the private utilities have any right to use the county's rights-of-way without a franchise. Although King County may not compel the utilities to agree to its terms, the utilities may not use the county's rights-of-way without a franchise agreement.

We therefore reverse the superior court's decision to grant the water-sewer districts and private utilities' motions for summary judgment, reverse in part the superior court's decision to deny King County's motion for summary judgment, and

---

[7] King County argues that allowing private utilities to use its rights-of-way without a franchise would violate article I, section 8 and article VIII, section 7 of the state constitution. Appellant King County's Opening Br. at 34-37, 37 n.14. The county further argues that allowing the water-sewer districts to use its rights-of-way without a franchise would violate article I, section 8 of the state constitution, as well as state accountancy laws. *Id.* at 43-45. Since we hold that the utilities before us may not use the county's rights-of-way without a franchise, we do not reach these issues.

32

remand with directions to the superior court to enter partial summary judgment in favor of King County on the facial validity of the franchise compensation portion of the ordinance and for further proceedings consistent with this opinion.

_[signature]_ Geo. McLeod, J.

WE CONCUR:

_[signature]_ Wiggins, J.

_[signature]_

Madsen, J.

_[signature]_ González, J.

_[signature]_ Owens, J.

_[signature]_ Yu, J.

*King County v. King County Water Districts et al.*
(Stephens, J., concurring)

No. 96360-6

STEPHENS, J. (concurring)—I concur in the decision reached by the majority and join in its well-reasoned statutory analysis. I also agree with the majority that franchise compensation is not an unlawful tax. To me, the county's authority to charge franchise compensation for utilities placed in county road rights-of-way is purely a matter of statute. All counties share this authority. To avoid any confusion, I do not join in those portions of the majority opinion that may be read to rest on King County's status as a "home rule" charter county under article XI, section 4 of the Washington State Constitution.

Stephens, J.

Lawrence-Berrey J.P.T.